No. 22,402.

WALTER L. PENNINGTON and FLORENCE PENNINGTON, *Appellants*, v. THE LITTLE PIRATE OIL AND GAS COMPANY, *Appellee*.

SYLLABUS BY THE COURT.

1. NEGLIGENCE—*Pumping Machinery—Death of Minor Son—Doctrine of Attractive Nuisance.* Pumping machinery inclosed in an iron house which one of the plaintiffs had been employed by the defendant to care for and operate, was allowed to run for a short time when he left the plant to attend to another task. The home of his family was within 100 feet of the power house, and while he was absent his son, twelve years old, entered the power house to shut off the engine and was accompanied by another son, who was nine years of age. The latter went so close to the machinery that he was caught in a belt and suffered injuries which resulted in his death. The children had been repeatedly warned by plaintiffs of the danger of close approach to the plant and directed to keep away from it. *Held*, that the doctrine of attractive nuisance is not applicable to the facts of the case, and that under the evidence defendant was not liable to plaintiffs for the injury and death of their son.

Appeal from Cowley district court; OLIVER P. FULLER, judge. Opinion filed April 10, 1920. Affirmed.

*James A. McDermott,* and *Harold W. Herrick,* both of Winfield, for the appellants.

*R. R. Vermilion, Earle W. Evans, Joseph G. Carey, W. F. Lilleston, W. E. Stanley,* and *A. C. Todd,* all of Wichita, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: The plaintiffs, Walter L. Pennington and Florence Pennington, brought this action against the Little Pirate Oil and Gas Company, charging it with negligently causing the death of their son James, who was nine years old. The trial court sustained a demurrer to plaintiffs' evidence and gave judgment for the defendant, and from this ruling and judgment plaintiffs appeal.

The defendant had constructed a pump house and installed in it pumping machinery, which was used in pumping oil from a well in the vicinity. The plaintiff Walter L. Pennington had been employed by defendant to run the plant, and had been in charge of it for a considerable period before the accident occurred. He and his family, consisting of a wife and six children, lived in a house about 100 feet from the plant. The father of James generally attended to the plant, but sometimes the mother started and stopped the engine, and occasionally they permitted Wayne, the oldest son, who was about twelve years of age, to turn the power on and off. Wayne went into the power house on the day of the accident to shut off the engine, and his brother James accompanied him. In some way not definitely shown, James was caught by the belt, carried around the pulley, and so severely injured that he died in a few minutes after the injury. The father and mother both testified that they had warned the children repeatedly to keep away from the plant, although the mother said that she had allowed the children to go with her into the power house when she was stopping or starting the machine. Wayne, the oldest son, testified that his mother had told him and James to go into the power house on the day of the injury, but this was denied by the mother.

The court held that plaintiffs' evidence did not establish a cause of action, and on this appeal they base their claim for a reversal on the theory that the pumping plant was an attractive nuisance, and that a liability arose against the defendant under the doctrine of the "turntable" cases. Taking plaintiffs' evidence at the strongest, and giving them the benefit of every favorable inference to be drawn from it, we think the case

cannot fairly be brought within the doctrine invoked. The character of the instrumentality and its location are material considerations in determining the question presented. The engine and pump are common and useful appliances, such as may be found on many of the farms in the country, and in most of the shops and business establishments in the cities. Of course, any machinery is interesting to children, but the appliances in question no more invite the curiosity and interest of children than do a corn sheller, a feed grinder, a cream separator, a water pump, a harvester, a threshing machine, and many other similar instrumentalities commonly used on farms. Stationary engines and motors quite similar to that under consideration can be found in most of the shops and business houses in towns and cities, and they are as equally exposed and easy of approach as the one in question. Such an appliance can hardly be regarded as so unusual and alluring to children as to furnish the essential elements of dangerous attraction and invitation. Here the engine and pump were inclosed in a corrugated iron house, and the door into it was provided with a lock, and both house and key were kept in the control of the plaintiff and his wife. It would be difficult to provide a bar or guard which would be practicable and afford greater protection than the house which inclosed the machinery. It is true that the door into the building was open, but it was impracticable to keep the only opening into the building closed and locked all the time against trespassers. In *Southern Cotton Oil Co. v. Pierce,* 145 Ga. 130, 133, it is said that—

"We do not think that the doctrine should be applied to the keeping of useful machinery in an inclosed building even though the doors be frequently left open."

(See also *Brown v. Canning Co.,* 132 Iowa, 631.)

The machinery as we have seen was not left unguarded, and the injured boy had not been left without warning. The plaintiffs testified that the children had been carefully instructed as to the danger of the machinery, and that they had told James not to go into the power house. The mother testified that she repeated the warning almost every time that the children went out of the home. Plaintiffs earnestly contend that the facts in the case bring it within the rule of *Smith v. Bottle Co.,* 84

Kan. 551, 114, Pac. 845. There a boy employed in a factory was injured by contact with a power fan. The machinery, although covered, was not inclosed. The revolutions of the fan were so rapid as to make the blades invisible and to cause a strong suction and a peculiar buzzing noise that excited the curiosity of children. The circumstances were essentially different from those of the present case. An important difference was that there was no fence or inclosure of the machinery in that case as there was in this. There the plant was near a schoolhouse and was frequented by children, while here the plant was isolated and remote from children other than those of the plaintiffs. In that case children were not warned of the danger nor forbidden to play in and about the machinery, while here specific and repeated warnings of the danger had been given, and orders made that they should keep away from the power house. There, too, the machinery was unusual and particularly alluring to children, and so a boy curious as to where the wind came from, put his hand into the fan and was injured. Here the machinery was not particularly attractive to children, and it could not have been further inclosed or barred without interfering with its legitimate and proper use. That case, as well as some others cited, went to the limit in the application of the doctrine of attractive nuisance to trespassing children, and the court is not disposed to grant any extensions of the principle (*Somerfield v. Power Co.,* 93 Kan. 762, 145 Pac. 893), and certainly does not feel warranted in applying it to the facts in this case. If there was any want of care in the premises, it is chargeable to the plaintiffs themselves. They had control and management of the power plant, and also the care and control of their children. The defendant could not be expected to supersede the plaintiffs in the direction and guardianship of the children, and neither can it be held responsible to them for their own inattention or lack of care.

Under the evidence it is clear that the defendant did not violate any duty which it owed to the plaintiffs, that the lamentable accident was not due to the negligence of the defendant, and hence there was no error in sustaining the demurrer to plaintiffs' evidence.

Judgment affirmed.