No. 24,069.

JOSEPH ZAGAR, a Minor, by BLAZ ZAGAR, His Next Friend, *Appellant*, v. THE UNION PACIFIC RAILROAD COMPANY (JAMES C. DAVIS substituted for JOHN BARTON PAYNE, as Director-general), *Appellees*.

SYLLABUS BY THE COURT.

1. NEGLIGENCE—*Steep Bluff Along Railroad Right of Way—Duty of Railroad Company Toward Strangers*. The owner of land on which a steep bluff is situated is not required to fence it, or otherwise insure the safety of strangers who may come upon his premises, not by invitation, but for the purpose of amusement or for motives of curiosity.

2. SAME—*Steep Bluff Along Railroad Right of Way—Excavations—Not an Attractive Nuisance—Injury to Boy*. And, where the owner, for his own uses, excavates at the base of a natural bluff, making it steeper, and where a boy thirteen and a half years old, while playing in a cave dug into the face of the bluff by other boys, is seriously injured by a large quantity of earth falling upon him, *held*, that the case does not come within the attractive nuisance doctrine and the owner is not liable for the injury.

Appeal from Wyandotte district court, division No. 3; WILLIAM H. Mc-CAMISH, judge. Opinion filed April 7, 1923. Affirmed.

Zagar v. Railroad Co.

*James M. Meek,* and *H. J. Emerson,* both of Kansas City, for the appellant.
*R. W. Blair, T. M. Lillard, O. B. Eidson,* all of Topeka, and *A. L. Berger,*
of Kansas City, for the appellees.

The opinion of the court was delivered by

Hopkins, J.: The question here presented is whether a bluff,
which is from 40 to 100 feet high and extending along the right of
way of a railroad, and which has been excavated at the base so
that it is steeper than it was in its natural formation, is an at-
tractive nuisance. The excavating was done by defendant at vari-
ous times since 1903 and extended along its right of way in Kansas
City, Kan., for about a thousand feet. Children residing in that
vicinity resorted there to play various games. They made caves,
constructed ladder ascents by cutting out footholds, and constructed
paths along the face of the bluff in order to provide ways of ascent
and descent.

On October 10, 1918, the plaintiff, who was then about thirteen
and a half years old, together with a number of other boys, were
playing along this bluff, and, while standing in the edge of a cave
which had been dug into the face of the bluff by other boys, a large
section of earth fell upon him, crushing him and fracturing one of
his vertebræ, producing paralysis of the limbs from which he will
be a cripple for life. He sued to recover $50,000 damages.

The trial court sustained defendant's motion for judgment on
the pleadings and opening statement of the plaintiff, and plaintiff
appeals.

The authorities are divided as to the principles of law applicable
to attractive nuisance cases. This court, while upholding the doc-
trine in the turntable cases, has refused to extend it to those cases
where the thing or condition complained of was similar to or a
reproduction of nature.

The plaintiff strongly contends that the case of *Price v. Water
Co.,* 58 Kan. 551, 50 Pac. 450, and like authorities control here.
We do not concur in that view. In the Price case the water com-
pany constructed and used a contrivance which, in itself, was an
attractive danger and from which a boy of eleven years slipped
into a reservoir and was drowned. In the opinion it was said:

"Without doubt, the common law exempts the owner of private grounds
from obligation to keep them in a safe condition for the benefit of trespassers,
idlers, bare licensees, or others who go upon them, not by invitation, express
or implied, but for pleasure or through curiosity. Cooley on Torts (2d. ed.),

718; 1 Thompson on Negligence, 303; *Dobbins v. M. K. & T. Rly. Co.,* 41 S. W. Rep. 62. The common law, however, does not permit the owner of private grounds to keep thereon allurements to the natural instincts of human or animal kind, without taking reasonable precautions to insure the safety of such as may be thereby attracted to his premises. To maintain upon one's property enticements to the ignorant or unwary, is tantamount to an invitation to visit, and to inspect and enjoy; and in such cases the obligation to endeavor to protect from the dangers of the seductive instrument or place follows as justly as though the invitation had been express." (p. 554.)

Also—

"The principle involved is the same as that upon which those actions known as the 'turntable cases' have been resolved, and in which it has been held, with few exceptions, that the maintenance, in an unguarded manner, of a dangerous apparatus for the shifting of locomotives, attractive to children residing or accustomed to playing near by, constitutes negligence upon the part of the companies." (p. 555.)

Also—

"One may not bait his premises with some dangerous instrument or quality, alluring to the incautious or vagrant, and then deny responsibility for the consequences of following the natural instincts of curiosity or amusement aroused thereby, without taking reasonable precautions to guard against the accidents liable to ensue." (p. 556.)

The facts here are not similar to those in the Price case. Here defendant had no dangerous artificial contrivance such as was the direct cause of the accident in the Price case. The defendant, in order to extend the use of its right of way, excavated the foot of the bluff, which changed it only by making it steeper. Many bluffs in their natural state are as steep as this one after its excavation. It is well known that boys construct caves in bluffs and in embankments; also in level ground. In this case the defendant constructed nothing different from what is found in natural bluffs that would invite or induce boys to go there to play. The condition here was entirely different from those described in the turntable cases. A turntable is an artificial instrument which invites the curious.

The owner of premises should not be held liable to trespassers unless they are induced to enter on the land by something unusual and attractive placed thereon. The principles enunciated by this court in *Harper v. City of Topeka,* 92 Kan. 11, 139 Pac. 1018, and *Somerfield v. Power Co.,* 93 Kan. 762, 145 Pac. 893, are more applicable to the case at bar.

In the Harper case the city of Topeka had constructed a pond, which was virtually a reproduction of those ponds found in nature. A child of tender years was drowned therein, but the court held the city was not liable. In the Somerfield case the court held the power company not liable for the death of a small child who fell into an open canal fifty feet wide and with perpendicular banks thirteen feet high carrying a stream of water from six to eight feet deep, and operated for commercial purposes through the corporate limits of a populous city.

In *Peters v. Bowman*, 115 Cal. 345, 47 Pac. 113, 598, it was said:

"The owner of a thing dangerous and attractive to children is not always and universally liable for an injury to a child tempted by the attraction. His liability bears a relation to the character of the thing, whether natural and common, or artificial and uncommon, to the comparative ease or difficulty of preventing the danger without destroying or impairing the usefulness of the thing, and, in short, to the reasonableness and propriety of his own conduct, in view of all surrounding circumstances and conditions. As to common dangers existing in the order of nature, it is the duty of parents to guard and warn their children, and, failing to do so, they should not expect to hold others responsible for their own want of care. But, with respect to dangers specially created by the act of the owner, novel in character, attractive and dangerous to children, easily guarded and rendered safe, the rule is, as it ought to be, different." (p. 356. See *Travis v. Kansas City,* 89 Kan. 547, 132 Pac. 189; *City of Omaha v. Bowman,* 52 Neb. 293; 40 L. R. A. 53; *Ratte v. Dawson,* 50 Minn. 450, 52 N. W. 965.)

*United Zinc Co. v. Britt,* 42 Supp. Ct. Rep. 299, is a recent case decided by the supreme court of the United States, in which it was held that the owner of land "owes no duty to children to protect them from hidden dangers on his land unless he has directly or impliedly invited them to come thereon."

We think that the doctrine of the turntable cases has no application to the facts in this case.

The judgment is affirmed.