No. 39,375

JAMES J. BRENNAN, III, by JAMES J. BRENNAN, JR., His Father and Next Friend, *Appellant,* v. KAW CONSTRUCTION COMPANY, INC., a Corporation, and CHARLES E. HALE and JULIUS E. WERLE, a Partnership, doing business as Hale & Werle Roofing and Siding Co., *Appellees.*

(271 P. 2d 253)

Opinion filed June 12, 1954.

*James R. Hoover,* of Prairie Village, argued the cause and *Howard E. Payne,* of Olathe, was with him on the briefs for the appellant.

*William H. Sanders,* of Kansas City, Mo., argued the cause and *Robert B. Caldwell, Blatchford Downing, Stanley Garrity* and *Robert S. Eastin,* all of Kansas City, Mo., and *John W. Breyfogle, Jr.,* of Olathe, were with him on the briefs for appellees Hale and Werle; *Robert P. Anderson,* of Overland Park, argued the cause and was on the briefs for appellee Kaw Construction Company, Inc.

The opinion of the court was delivered by

SMITH, J.: This was an action by a two-year-old child by his father to recover damages alleged to have been sustained when the defendants maintained upon premises under their control a conveyer alleged to be dangerous to children of tender years by reason of their inability to appreciate the peril they incurred by playing upon it, commonly known as an attractive nuisance case. Judgment was for the defendants, sustaining their demurrer to the plaintiff's petition. He has appealed.

After the formal allegations, the petition alleged that the Kaw Construction Company was in the business of contracting for and construction of homes in Johnson county; that the defendants Hale and Werle were partners with their residence in Johnson county; that about the 28th of September, 1952, defendants were in exclusive possession and control of real property located at 1213 Fredrickson Drive in Olathe; that in connection with the construction of a house upon that property the defendants used and maintained an escalator-type conveyer for transporting materials from the ground to the roof of the house; that it was left in place for use on Sunday, September 28, 1952, and was not enclosed, retracted to ground level, or guarded in any way, and the mechanism thereof was in place for operation at all times, attractive to young children as a plaything and very dangerous for them to use, and to walk up to the roof of the house under construction, and such danger could have been avoided by retracting the conveyer to ground level, and all these facts were well known to defendants at all times; that plaintiff resided on the above date next door to the house where the conveyer was located and his son, the plaintiff, who was two years old on that day, and other small children, had been in the habit of watching and passing along the street by this house; that the conveyer was at all times when the workmen left their work retracted to ground level when not in use, but on the above date and for a day prior thereto defendants and their servants negligently left it in place for use, unguarded, and while in this condition plaintiff wandered into the property to engage in play with another child, walked up the conveyer onto the roof of the house and from there fell to the ground; that at such time James J. Brennan III was of too tender an age to appreciate the danger which he incurred by playing upon the conveyer and his resulting injuries were caused by the defendants, their agents, servants and employees carelessly and negligently leaving the conveyer in place, abandoned

and unguarded; that as a consequence thereof plaintiff's body was bruised and he was damaged.

The defendant Kaw Construction Company admitted the formal allegations and denied each and every other allegation. The answer further stated that all of the equipment described was exclusively owned, maintained, operated and controlled by the defendant partnership, Hale and Werle, who had an independent contract for the application of roofing upon the house in question.

The prayer was that the plaintiff's petition be denied.

The defendant partnership admitted the formal allegations and filed a general denial. They alleged further that they were not in exclusive possession of the premises; that other contractors, firms and individuals were in and about the premises and used the equipment thereon as occasion arose and that if the conveyer was left extended and unguarded, which they did not admit, some other person had left it so.

At the close of plaintiff's evidence the defendants both demurred to it. These demurrers were sustained—hence this appeal.

The specified grounds of defendants Hale and Werle were that there was no showing of any negligence on the part of the partnership, no showing of any acts of the partnership that could have been the proximate cause of plaintiff's injuries and the elevator in question was no attractive nuisance.

We shall state at the outset the rule followed by this court when we are ruling upon a demurrer to the evidence. We do not weigh evidence in such a case. We do not weigh or compare contradictory testimony but we accept all evidence as true and give to the plaintiff the benefit of all reasonable inferences that may be properly drawn therefrom and we consider only such portions of the evidence as are favorable to the plaintiff. (See *Blankenship v. Fraker*, 173 Kan. 438, 249 P. 2d 683.)

Chronologically stated, the evidence established that on Sunday, September 28, 1952, and for a time prior thereto the Kaw Construction Company, contractor, was constructing a house on property located at 1213 Fredrickson Drive, Olathe, Kansas. Hale and Werle, subcontractors for roofing of said house, were the parties in exclusive possession and control of the premises and condition, instrumentality and machinery thereon.

On September 28, 1952, a 32-foot Sam Mulke Elevator, owned and controlled by Hale and Werle, was in place, providing a

gradual incline upon which to walk or crawl from the ground to the roof of the house, which elevator was openly exposed, unguarded and upon which children of tender years were playing. The elevator could have been easily retracted to the ground, but was left up over the week end because it was easier for the workmen and saved them time. On September 28, 1952, about noon, James J. Brennan III, age two years, escaped from his enclosed yard next door, ascended to the roof of the house under construction, where he was seen thereon, and shortly thereafter was found lying unconscious adjacent to the foundation of the house.

On and prior to Sunday, September 28, 1952, many children frequented the premises and the owner could retract the elevator by merely winding same down to the ground level. By reason of this condition at 1213 Fredrickson Street, Olathe, Kansas, plaintiff was injured.

Our question is whether such was sufficient proof of the existence of an attractive nuisance to warrant the submission of the question to the jury.

In *Pennington v. Oil & Gas Co.*, 106 Kan. 569, 189 Pac. 137, we considered a case where a child had gone into a power house with his 12-year-old brother and was caught in a belt and injured. The action was brought upon the attractive nuisance theory. We said:

"The engine and pump are common and useful appliances, such as may be found on many of the farms in the country, and in most of the shops and business establishments in the cities. Of course, any machinery is interesting to children, but the appliances in question no more invite the curiosity and interest of children than do a corn sheller, a feed grinder, a cream separator, a water pump, a harvester, a threshing machine, and many other similar instrumentalities commonly used on farms. Stationary engines and motors quite similar to that under consideration can be found in most of the shops and business houses in towns and cities, and they are as equally exposed and easy of approach as the one in question. Such an appliance can hardly be regarded as so unusual and alluring to children as to furnish the essential elements of dangerous attraction and invitation."

We dealt with the question as though two elements were necessary, that is, dangerous attraction and invitation.

In *Moseley v. City of Kansas City*, 170 Kan. 585, 228 P. 2d 699, the action was one where a boy sixteen years old had climbed a pole used by the board of public utilities of the city and the telephone company to convey its wires and made contact from which he re-

ceived a charge of electricity, causing his death. The action was brought on the attractive nuisance theory. We stated the question to be whether the child, who was at least a technical trespasser, was excused from the normal liability of a trespasser because the equipment was provided with steps so it could easily be climbed and thus provided an invitation to the boy to climb it. We said:

"It is not everything which may attract a child that can be regarded as an attractive nuisance, for there is no limit to the class of objects which may be attractive to a normal child even though he be less than ten years of age (45 C. J. p. 765). To hold otherwise would place an unreasonable burden upon the owner of almost every kind of property capable of causing personal injury under any circumstances. The condition or appliance must be something unusual and which is of a nature rendering it peculiarly or unusually attractive or alluring to children. The object must be one and so situated that the owner knew, or should have known, it was attractive to children of tender years. In this case plaintiffs do not allege that the defendants knew or *should* have known children had played about the pole in question and that it was attractive and dangerous to children. What they do allege is that defendants *could* have known those facts. That is insufficient. The word 'should' denotes duty. The word 'could' denotes no more than a possibility."

The machine, which was the subject of this action, was one in common use where building operations are being carried on. There was nothing novel about its presence on the lot in question except the fact of its being on that particular lot at that particular week end. Actually the rule as to liability in cases of this kind is whether the danger is latent or patent, that is, stated in another way—Was there some hidden danger connected with the presence of this elevator with one end on the ground and the other on the roof of the house? This case is different from *Talbott v. Farmers Union Co-op Elevator,* 174 Kan. 435, 256 P. 2d 856. There the petition pleaded the maintenance of a place where children of the town were known to congregate for the purpose of playing. The damage was caused, however, by a well that was left open or insufficiently covered so that plaintiff fell into it. Here there was no latent danger. Any danger that existed was foreseeable. The rule is well stated in 38 *Am. Jur.* NEGLIGENCE, Sec. 151, p. 818:

"The character of the danger, as open and obvious, or hidden and latent, is an important consideration. The doctrine of attractive nuisance, it has been said, is limited in its application to cases where the danger is latent, and affords no basis for a recovery where the injury complained of was produced by a peril of an obvious or patent character. A danger which is not only obvious but natural, considering the instrumentality from which it arises, is not within

the meaning of the attractive nuisance doctrine, for the reason that an owner or occupant is entitled to assume that the parents or guardians of a child will have warned him to avoid such a peril."

See, also, *Stimpson v. Bartex Pipe Line Co.*, 120 Tex. 232, 36 S. W. 2d 473 (1931), where a child climbed to the top of an oil storage tank thirty feet high by way of a stairway leading from the ground to the top of the tank and in attempting to descend by means of a vent pipe fell to the ground and was injured. The court stated:

" 'It has been considered . . . that the attractive nuisance doctrine applies only where the danger is latent and not where it is patent, for the reason that the inefficiency of children who are so little advanced as to be able to recognize patent dangers, they should not be allowed to shift the care of them from their parents to strangers or impose upon the owner of property a duty and liability where otherwise none would exist.'

. . . . . . . . . . . . . .

"We think it a salutary rule which imposes the duty to guard a child of such immaturity as to be able to appreciate patent and unconcealed dangers upon the parent instead of the landowner.

. . . . . . . . . . . . . .

"The facts pleaded merely show a danger which was obvious and patent even to a child of tender years, as such a child in the very nature of things is thoroughly capable of appreciating the fact that if it falls from a structure of the height of the oil tank it would in all probability receive an injury."

We have followed that rule in Kansas and have held in cases where there was a latent danger that could not be readily seen, the situation constituted an attractive nuisance. Any danger that existed in this situation was the danger from falling off the house after a child had climbed to the roof by means of the machine. This could hardly be called a latent danger.

It follows the trial court ruled correctly in sustaining defendants' demurrer to plaintiff's evidence.

The judgment of the trial court is affirmed.

WERTZ, J., dissenting.