No. 42,567

JAMES M. MCGAUGHEY, a Minor, by and through his next friend, JAMES LESTER MCGAUGHEY, *Appellee,* v. DENNIS HAINES and A. K. SCHMIDT, *Appellants.*

(370 P. 2d 120)

Opinion filed April 7, 1962.

*D. C. Martindell* and *Robert C. Martindell,* both of Hutchinson, argued the cause, and *W. D. P. Carey, J. Richards Hunter, Harry Dunn, Edw. B. Brabets, William B. Swearer,* and *Elwin Cabbage,* all of Hutchinson, were with them on the briefs for the appellants.

*Russell Shultz,* of Wichita, argued the cause, and *Walter A. Sawhill* and *Kenneth C. Kimmell,* both of Wichita, were with him on the briefs for the appellee.

*Richard D. Rogers* and *John F. Stites,* both of Manhattan, were on the briefs *amicus curiae* for the Kansas Farm Bureau, and *Warden L. Noe,* of Holton, was on the briefs *amicus curiae* for the Kansas Livestock Association.

The opinion of the court was delivered by

ROBB, J.: This is an appeal from a verdict and judgment in favor of plaintiff, a minor, in an action for personal injuries brought by his father and next friend, from the orders overruling defendant's motion for a directed verdict at the close of the evidence and for a new trial, together with other orders that do not need immediate mention.

Plaintiff's amended petition, in brief, alleged that on July 4, 1957, he resided with his parents southwest of Haven, Kansas, where they rented a farm dwelling. Immediately adjoining this home property on the east was a farm owned by Daisy Haines and operated by her and Dennis Haines. A. K. Schmidt was the agent, servant and employee of Daisy and Dennis Haines. Prior to July 4, 1957, Schmidt, in working as such farm employee of Daisy and Dennis, was using a 1955 model Massey-Harris tractor drawing

a tandem disk. The tractor was started by use of an ignition key and a starter. It and the disk were new, bright red in color, and were attractive to children of tender years and particularly to this plaintiff, who was not a farm boy and was unfamiliar with such machinery. It was unknown to plaintiff whether this was normal farm machinery. Children in the area, including plaintiff, were in the habit of playing along the east side of their home area and along the west side of defendants' farm within fifty feet of the fence line, and this was well known to defendants. Plaintiff had been seen so playing in the area by A. K. Schmidt. On July 3, 1957, at 7:00 p. m. Schmidt had carelessly and negligently left this tractor and tandem disk in gear and with the ignition key therein standing within approximately 100 yards of plaintiff's dwelling house and about twelve feet east of the fence line dividing the two tracts of land with full knowledge of the danger incident thereto.

On July 4, 1957, at 4:00 p. m. Plaintiff (then four years of age) and his stepbrother, Kenneth Snyder (then eleven years of age), crossed the fence onto the land of defendants and played upon the tractor and disk. Kenneth played with the ignition key and the starter of the tractor and caused the tractor to start and plaintiff in some way fell so that the disk ran and passed over his body.

Plaintiff was of too tender an age to appreciate the danger and risk of playing and riding on a tractor. His injuries were caused by defendants and their employee carelessly and negligently leaving, in the close vicinity of plaintiff's home, the tractor and disk, which were attractive and in such condition they could be started and moved by children. Thus the plaintiff's theory and cause of action was based upon the proposition that the tractor with the tandem disk thereto attached, under the surrounding facts and circumstances, constituted an attractive nuisance. Prior to trial the court below ruled plaintiff could introduce evidence that the key was in the ignition of the tractor, to which the disk was attached, and that the location of the machinery constituted an attractive nuisance but the evidence could not be introduced for any other purpose. The trial court's ruling, the petition, and, of course, the record on appeal were all predicated upon the basis of attractive nuisance. It was also predetermined by the trial court that plaintiff could introduce evidence of the location of the farm machinery on July 3, 1957.

The record discloses further that the land of Daisy and Dennis

Haines consisted of 110 acres of farm land about three miles west and one mile south of the rural community of Haven in Reno county, Kansas. The west fifty acres of the quarter section was owned by Forrest Smith and at the south end of Smith's property there was a basement dwelling and small garden plot which he leased to plaintiff's father in the fall of 1955. Just east of the basement home and on the Smith's property was a ravine with the customary undergrowth found along brooks and streams that are dry part of the year. This ravine became deeper as it went north. Just beyond the ravine to the east on the dividing line between the Smith property and the land of Daisy and Dennis there was a thick hedge fence which had breaks in the hedge so that people and objects on one side thereof could be seen from the other side. Cane, wheat, and maize (also called milo) were the principal crops planted and growing on both properties at the time in question. Measuring north and south, the south forty rods of the land belonging to Daisy and Dennis was planted in wheat. In the next forty rods of land to the north, the field of operations involved herein, Schmidt, on July 3, 1957, and at the direction of Dennis, had been reseeding the maize crop in that field. After he had double disked the ground, he left the tractor and attached disk at a spot approximately 150 feet south and fifty feet east of the northwest corner of this maize field, but about 10:00 a. m. on July 4, 1957, while drilling the maize crop with a smaller tractor, Schmidt had to move the tractor and disk. At about 5:00 or 5:30 p. m. on that same day Schmidt returned the smaller tractor and drill to the residence of Daisy and Dennis, which was about two miles distant from the field, and then he returned to get his pick-up truck. During the day on July 4, 1957, Schmidt had noticed two men and two boys (one of the men was plaintiff's father and the boys were plaintiff and his stepbrother Kenneth) riding on a combine which was being used to cut the wheat on the Smith land to the north and west of the basement dwelling. As they often did, Kenneth and plaintiff took Kenneth's BB gun and went hunting along the ravine on the Smith property and while there seems to be a conflict in the evidence as to whether Kenneth had previously seen the tractor and disk on July 3, 1957, or if he saw it first on July 4, 1957, just as they were opposite the opening in the hedge at the northwest corner of the newly-drilled maize field, Kenneth got onto the tractor, turned the key in the ignition, pushed the starter, used the clutch, placed the

tractor in gear and with difficulty turned it around. Kenneth then asked plaintiff to get onto the tractor, which plaintiff finally did. After plaintiff was on the tractor, Kenneth again started it and plaintiff fell therefrom into the path of the disk and received very serious and permanent injuries.

Defendants filed motions during the trial and at the close of plaintiff's evidence Dennis and Schmidt joined in a demurrer thereto and Daisy demurred separately, which latter demurrer was sustained by the trial court and we have no appeal therefrom.

The demurrer of Dennis and Schmidt was overruled. However, at the close of all the evidence defendants moved for a directed verdict which the trial court also overruled. The ruling on that order is included in this appeal and in consideration thereof we shall proceed to the more vital question in the lawsuit which is whether a tractor and disk left in his employer's field by a farm employee at the end of a day's work is an attractive nuisance as a matter of law.

Kansas is primarily an agricultural state and since the community in and around Haven is entirely devoted to agricultural pursuits and it is undisputed there were more tractors than automobiles in the area, it is obvious that farming was practically all done by power machinery and the presence of many types of farm equipment was a common sight in the area. Plaintiff and his stepbrother Kenneth had lived in farm communities previously and were not strangers to general farm machinery. They had ridden on a combine with their father on the day in question and had been seen doing so by Schmidt. Generally during the planting season farmers do not move their machinery from the location where they are using it at the end of each day's work. They customarily do not move machinery until they have fully completed the portion of the work requiring that particular equipment. Schmidt, after using the tandem disk on July 3, 1957, parked it on his employer's private property.

Dennis, his employer, testified that on a previous occasion he had asked plaintiff to get out of the south field and go back home and later that day plaintiff told Dennis that plaintiff's mother had also told him he was to stay on his side of the hedge fence and Dennis was supposed to stay on his side of the hedge fence. While it is true the children played up and down the ravine and in an open space between the ravine and the hedge fence, the evidence

does not show that it was ever brought to the attention of Dennis or Schmidt that plaintiff or Kenneth on any other occasion than that mentioned above had been seen on either of the forty acre tracts planted to wheat and maize. When Schmidt finished drilling the maize with the small tractor, he took it to the residence of his employer, but he did not so return the large tractor with the tandem disk attached. If Schmidt had not completed his work with the tandem disk, he certainly could not be required to return it to the home of his employer each night, nor could any other farm employee or owner be required so to do under similar circumstances for the reason it would make operation, possession, or ownership of farm property and equipment burdensome instead of making it profitable or enjoyable. Such precaution would be impractical, unreasonable, and intolerable and would adversely affect the entire agricultural industry. (38 Am. Jur., Negligence, § 147, pp. 812, 813; 65 C. J. S., Negligence, § 29 [8], p. 465.)

An exhaustive annotation in regard to the doctrine of attractive nuisance as applied to vehicles or their contents is contained in 3 A. L. R. 2d 758-803, from which it appears to be well-settled that a vehicle in and of itself is not an attractive nuisance. However, there is little unanimity in the different court decisions where vehicles are left standing unattended except that one of the reasons advanced by courts for holding the doctrine of attractive nuisance inapplicable because of injury to a child by reason of a vehicle having been left unattended is that a vehicle, if properly parked, does not present any unusual attraction to children. In the above analysis we find in § 11, page 777, a discussion of cases where children put standing vehicles into motion and the general rule is that in a majority of those cases where a vehicle was left temporarily unattended and injury resulted to one or more children, liability under the doctrine was denied, and it was stated that where a tractor had been left unattended with a key in the switch and the tractor with trailer detached had been parked along a curb just as myriads of cars are, no unusual allurement was presented. Neither did the fact that the key was not removed from the ignition lock present such an allurement as to bring the case within the attractive nuisance doctrine because the presence of the key did not cause the children to trespass upon the tractor but was only something they discovered after they climbed thereupon. Attention is directed to this annotation for a complete and full

disclosure of the care with which the courts of many jurisdictions have approached the subject of the doctrine of attractive nuisance. The overall impression created is that courts in dealing with the doctrine are striving to limit its application as much as reasonably can be done and yet not deprive one entitled to recover thereunder from seeking and obtaining a judgment.

Counsel in the case at bar should be complimented for the manner in which they have briefed the principal question and more particularly our Kansas decisions applicable thereto. In *Brennan v. Kaw Construction Co.*, 176 Kan. 465, 271 P. 2d 253, the instrumentality in question was an elevator which served as a gradual incline for transportation of both men and materials from the ground to the roof of a house being constructed in a housing project. It had been left standing, openly exposed, and unguarded over the week-end because it was easier for the workmen and saved them time. This court held such elevator was not an attractive nuisance. At page 468 of the opinion in quoting from *Pennington v. Oil & Gas Co.*, 106 Kan. 569, 189 Pac. 137, in essence it was stated that appliances there involved did no more to invite the curiosity and interest of children than do a corn sheller, feed grinder, cream separator, water pump, harvester, threshing machine, and many other similar instruments commonly used on farms, and such appliances could hardly be regarded as so unusual and alluring to children as to furnish the essential elements of dangerous attraction and invitation. On page 469 of the Brennan opinion this court, in quoting from *Moseley v. City of Kansas City*, 170 Kan. 585, 228 P. 2d 699, further stated that everything that may attract a child cannot be regarded as an attractive nuisance for there is no limit to the class of objects which may be attractive to a normal child even though he is less than ten years of age, and to hold otherwise would place an unreasonable burden upon the ownership of property capable of causing personal injury under any circumstances. The object must be one and so situated that the owner knew, or should have known, it was attractive to children of tender years.

The court in the Brennan case (p. 470) discussed the fact that attractive nuisance cannot generally be predicated upon a patent danger but must be based upon a latent danger. This likewise appears to be the general rule in most jurisdictions. (38 Am. Jur., Negligence, § 151, p. 818; 65 C. J. S., Negligence, § 29 [3], p. 461.)

We have not overlooked any of the many authorities cited by counsel but we think those discussed are sufficient.

We conclude the agricultural pursuits of the farmers of the state of Kansas should not be handicapped by their being required, at the end of each day's work, to remove their farm machinery, over busy highways, from the fields in which they have been working to some sheltered place away from the eyes of farm children. And this would be a special handicap where, as here, children had not been known to and had not been seen by the farmer, or his employee, playing on the farmer's private property where he, or his employee, performed work with the machinery involved, much less his having any knowledge or opportunity to gain any such knowledge that they had or would play upon such machinery. On the record before us we are constrained to hold the tractor and tandem disk attached thereto was not an attractive nuisance under the existing facts and circumstances and for that reason the trial court erred in overruling defendant's motion for a directed verdict.

Reversed with directions.