No. 45,503

Louis Bartlett, Father and Heir at Law of Dean L. Bartlett, Deceased, and Vernon A. Elliott, Father and Heir at Law of Vernon A. Elliott, Jr., Deceased, *Appellees,* v. Marinas Heersche, d/b/a Wichita Big River Sand Company, *Appellant* and *Cross Appellee,* and Davis Corporation, a Kansas Corporation, *Appellant* and *Cross Appellant.*

(462 P. 2d 763)

Opinion filed December 23, 1969.

Robert J. O'Connor, of Wichita, argued the cause, and A. W. Hershberger, Richard Jones, H. E. Jones, Jerome E. Jones, Robert J. Roth, William R. Smith, Greer Gsell, Stephen J. Jones, Michael Jones and George D. McCarthy, all of Wichita, were with him on the brief for the appellant and cross appellee, Marinas Heersche, d/b/a Wichita Big River Sand Company.

Fred A. Beaty, of Wichita, argued the cause, and E. Lael Alkire, Richard B. Clausing, Robert A. Coldsnow, Aubrey J. Bradley, Jr., Thomas A. Bush, Ronald J. Wilkinson, Gillard Cohen, Harry L. Eddy and Martha R. Hodges, all of Wichita, were with him on the brief for the appellant and cross appellant, Davis Corporation.

John C. Frank, of Wichita, argued the cause, and Patrick Kelly and Lloyd M. Kagey, both of Wichita, were with him on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This is a wrongful death action brought by the parents of two young boys who drowned in a sand pit within the city limits of Wichita, Kansas. The case was tried to a jury on the theory of attractive nuisance and a verdict returned for the plaintiffs in the total sum of $52,024.02. From the judgment thereon appeal has been duly perfected by the defendants assigning various trial errors.

Among the trial errors asserted, the appellants challenge the sufficiency of the evidence to support a verdict on the theory of attractive nuisance.

The evidence discloses that Dean L. Bartlett, four years old, and Vernon A. (Buddy) Elliott, Jr., five years old, were playmates and resided near each other in the area of Southwest Wichita. The Bartletts were the parents of four other children under ten years of age, and the Elliotts had one other child, a three year old daughter. The Bartletts moved into the neighborhood in August, 1964, and the Elliotts in July of the same year. Both families were buying their homes which were situated in the 4500 block on South Charles Street.

In the spring of 1966 the Elliott boy was a kindergartner in school, but the Bartlett boy was too young for school. The two boys were together whenever possible, and their mothers cooperated in the supervision of the children. Mrs. Elliott ordinarily cared for Mrs. Bartlett's children when the latter was employed. Mrs. Bartlett on the day in question was working part time in the afternoon, but Mrs. Elliott was not caring for the Bartlett children because her daughter had "pink-eye," which was contagious. However, a Mrs. Morrow had been hired to care for the Bartlett boy.

On the afternoon of March 15, 1966, the Elliott boy came home from school at approximately 4:00 o'clock. He asked his mother if he could play with Dean and another five year old boy named Randy Schauner. Permission was given and Mrs. Elliott returned to care for her daughter. At that time the boys were in the front yard. Ten or fifteen minutes later Mrs. Elliott, not hearing the boys, went out to look for them. Soon Randy's grandmother came to the Elliott home and told Mrs. Elliott the boys were at the sand pit, and Dean had his feet wet. Randy had run back to the

pit and his grandmother wanted Mrs. Elliott to go to the pit and get them.

The sand pit where the boys had gone was located on a forty-acre tract and occupied approximately fifteen acres, with an attained depth of nearly forty feet of water in places. The property upon which the sand pit was located was owned by the Davis Corporation (defendant-appellant-cross appellant) and operated by Marinas Heersche, d/b/a Wichita Big River Sand Company (defendant-appellant-cross appellee.) The south boundary of the tract upon which the sand pit was situated was 44th Street. On the south edge of the tract was an old three-strand barbed wire fence, partially down and in poor condition.

South Charles Street, upon which the homes of the plaintiffs are located, dead-ends into 44th Street across from the tract in question. The plaintiffs' houses are less than half a city block south of 44th Street.

A second fence, approximately one hundred yards north of and parallel to the barbed wire fence, made of V-shaped mesh wire was "mashed down" and could be stepped over at a point north of the end of Charles Street. One block east of Charles Street the V-shaped mesh wire fence had a cut leaving an opening twelve feet wide. The south bank of the sand pit was approximately one hundred yards north of the V-shaped mesh wire fence.

The surface of the water in the pit was twelve to eighteen inches lower than the bank, and a shelf covered with three or four inches of water extended for approximately four feet from the bank and then sloped steeply to a depth of about ten feet within ten feet of the shore. The sand pit contained pumping machinery on the north bank which could be seen from the plaintiffs' houses. At least one raft, made of steel drums and a wooden platform used to support hoses or pipes employed in the sand pumping operation, floated free in the water at or near the south bank of the pit unattached to the pumping machinery or pumping operations at the pit.

Although the water was not visible from the homes of the plaintiffs, the presence of the pit was commonly known to all of the residents of the neighborhood.

A petition had been circulated in the neighborhood approximately a year prior to the incident to require the owners and operators

of the pit to repair the fences, and children were known to have frequented the area.

When Mrs. Elliott went to the sand pit on the afternoon in question she followed a path the boys had used in going to the sand pit. She stumbled over the V-shaped mesh wire fence where it was down, and continued on to the edge of the pit where she saw the body of her son floating face down in the water. After procuring help the body of her son was recovered, and the body of the Bartlett boy was later recovered by skin divers from the bottom of the pit.

The questioning of Randy Schauner and investigation of the tragedy disclosed that the three boys boarded a raft at the south side of the sand pit. After the three boys had boarded the raft, it either floated out or was shoved off into the water. Before it got very far into the water Randy jumped off and walked to the bank. Randy then saw Dean trying to help the Elliott boy out of the water, and soon they were both in the water, when Randy ran home for help. Randy said all three boys had crawled onto the raft, and when it started to float toward the north they began to cry and jump off. The last he heard was one of the boys crying, "help, help."

The appellant Heersche contends the trial court should have found that an attractive nuisance did not exist at the sand pit as a matter of law. It is argued the specific conditions alleged to have created the attractive hazard were the water and the raft. Upon the theory that the evidence fails to establish an attractive nuisance, the appellant Heersche argues the appellants' negligence in failing to maintain the fences around the artificial and hazardous body of water cannot amount to more than ordinary negligence, and the drowned children were remanded to the posture of trespassers.

Heersche contends the attractive nuisance doctrine is not applicable to things which exist in the order of nature, such as pools or deep places in a river or creek. He relies upon cases which hold that the attractive nuisance doctrine is not applicable to artificially created things which virtually reproduce things found in nature—that nature does not maintain attractive nuisances. (Citing, *Harper v. City of Topeka*, 92 Kan. 11, 139 Pac. 1018; *Somerfield v. Power Co.*, 93 Kan. 762, 145 Pac. 893; *Zagar v. Railroad Co.*, 113 Kan. 240, 214 Pac. 107; *Gilliland v. City of*

*Topeka,* 124 Kan. 726, 262 Pac. 493; and *McCormick v. Williams,* 194 Kan. 81, 397 P. 2d 392, among others.)

Heersche argues the danger from water was patent, and liability under the attractive nuisance doctrine must be based upon latent dangers.

The evidence in the instant case, however, goes beyond the situations presented in the cases upon which the appellant Heersche relies. The attractive nuisance doctrine was held applicable where children lost their lives by drowning in *Price v. Water Co.,* 58 Kan. 551, 50 Pac. 450; *Kansas City v. Siese,* 71 Kan. 283, 80 Pac. 626; *Smith v. Evans,* 178 Kan. 259, 284 P. 2d 1065; and *Galleher v. City of Wichita,* 179 Kan. 513, 296 P. 2d 1062.

While the doctrine of attractive nuisance has been variously stated, it is in accord with the proposition that one who maintains upon his premises, a condition, instrumentality, machine, or other agency which is dangerous to children of tender years, by reason of their inability to appreciate the peril therein, and which reasonably may be expected to attract children of tender years to the premises, is under a duty to exercise reasonable care to protect them against the dangers of the attraction. (38 Am. Jur., Negligence, § 142.)

In the early case of *Price v. Water Co.,* supra, the court said:

". . . Without doubt, the common law exempts the owner of private grounds from obligation to keep them in a safe condition for the benefit of trespassers, . . . The common law, however, does not permit the owner of private grounds to keep thereon allurements to the natural instincts of human or animal kind, without taking reasonable precautions to insure the safety of such as may be thereby attracted to his premises. To maintain upon one's property enticements to the ignorant or unwary, is tantamount to an invitation to visit, and to inspect and enjoy; . . .

". . . in the present case, the reservoirs had been so fenced as to render access to them difficult, to say the least, and in any event to operate as notice to stay on the outside because of the dangerous situation within. Whatever merit such precautionary measures might have under other circumstances, it is sufficient to say that, in this case, they were not reasonably effective; because it was the daily habit of trespassing boys to mount the fence and frequent the reservoirs on the inside, and this habit was known to the Company's responsible agent, and was not only tolerated but went unrebuked by him. Knowing the fence to be ineffective either as barrier or warning, it was the duty of the Company to expel the intruders, or adopt other measures to avoid accident. . . ." (pp. 554, 556, 557.)

Liability under the attractive nuisance doctrine must be based upon latent, not patent, dangers. (*McGaughey v. Haines*, 189 Kan. 453, 458, 370 P. 2d 120; and *Brennan v. Kaw Construction Co.*, 176 Kan. 465, 271 P. 2d 253.)

What the law considers to be a latent danger is not confined to things hidden from the eye alone. It extends to things hidden from the appreciation of the persons injured, hidden from the combination of eyesight and knowledge—hidden knowledge of the properties of the things which the eyesight observes. It may thus be said a concealed danger extends to things hidden from appreciation of persons injured, as well as to things hidden from the eye. (*Brittain v. Cubbon*, 190 Kan. 641, 378 P. 2d 141.)

A situation analogous to the instant case was presented in *Galleher v. City of Wichita*, supra, where the attractive nuisance doctrine was applied to the drowning of a boy in a sand pit within the city limits of the city of Wichita in the year 1953.

Without reviewing the *Galleher* case, we consider the holding therein persuasive in the instant case. The facts are sufficiently similar in the instant case to warrant its application here. Further discussion herein will proceed upon the assumption the reader has familiarized himself with the *Galleher* decision.

In 1963, ten years after the Galleher boy drowned, the city of Wichita passed ordinance No. 27-273 which is applicable herein. The pertinent provisions of the ordinance read:

"Section 2: . . . It is hereby declared to be unlawful for any person to operate or maintain within the City of Wichita any borrow pit, sand pit or gravel pit unless the following conditions of operation, maintenance and public protection are established and maintained by the owner of such premises:

"(1) A good and sufficient fence shall be constructed so as to completely enclose said borrow pit, sand pit or gravel pit.

"(2) In no case shall the construction of the fence be within 15 feet of the actual excavation at all points of said excavation and such fence may provide for reasonable access gates installed at the height of the fence, which gates shall be locked except during working hours when the pit is being used for the removal of sand, gravel or filling material or other business activity. Such fence shall be maintained in good repair.

"(3) Such fences shall be a minimum height of fifty-eight inches (58″) and shall be of the following types construction:

"(*a*) A V-mesh wire or chain link fence; . . ."

The intent and force of the foregoing ordinance is clear—it makes it unlawful to *operate* a sand pit unless certain protective measures for the benefit of the public are established by the *owner* of the premises.

In the instant case sufficient evidence was presented to sustain a finding by the jury that an attractive nuisance existed on the appellants' premises, and by reason thereof the appellants were obligated to exercise ordinary care in maintaining a fence required by the ordinance. Once it is established that an attractive nuisance exists to the satisfaction of the jury, simple negligence on the part of the appellants in failing to maintain an adequate fence as required by the ordinance would be sufficient to impose liability upon both the *operator* of the premises and the *owner* of the premises by virtue of the specific provisions of the ordinance.

Those whose acts unite in producing the injury are jointly and severally liable to the injured party or parties. (*Rowell v. City of Wichita,* 162 Kan. 294, 176 P. 2d 590; and *Rork v. Beatty,* 169 Kan. 320, 219 P. 2d 355.)

Heersche also contends one of the elements essential to the applicability of the attractive nuisance doctrine is that the instrumentality alleged to be the attractive nuisance must itself have enticed the child onto the premises; if it attracts him after he already has become a trespasser, the doctrine is not applicable. (Citing *McCormick v. Williams,* supra.)

This point is answered by *Galleher v. City of Wichita,* supra. The activities and pumping operations at the sand pit were visible and could be heard by the residents in the vicinity of the sand pit. The fact that boys had frequented the sand pit on prior occasions made the premises alluring, particularly where the boys had previous knowledge of the presence of the raft on the water available for play. Here the appellants knew that young children were attracted to the premises, although they argue the record shows that only boys twelve and thirteen years of age frequented the area, and that only on one prior occasion did a child of "tender years" play around the raft.

The appellants attempt to distinguish the cases of *Galleher v. City of Wichita,* supra, and *Smith v. Evans,* supra, on the ground that the court was there dealing with demurrers to petitions requiring a liberal construction in favor of the plaintiffs. They argue this distinguishes them from the instant case because the plaintiffs here are not entitled to a liberal construction and the indulgence of the reasonable inferences in their favor. The fallacy in this argument lies in the fact that we are obligated to view the evidence upon which the jury found the facts in this case upon the same basis.

(*Thomas v. Kansas City Southern Rly. Co.*, 197 Kan. 747, 421 P. 2d 51; and *Jarnagin v. Ditus*, 198 Kan. 413, 424 P. 2d 265.)

The appellants contend the trial court erred in not submitting the issues of the plaintiffs' contributory negligence to the jury.

After the pretrial order contributory negligence remained an issue in the case, but after the trial court heard the evidence it instructed the jury that as a matter of law neither set of parents was guilty of negligence in this case.

The substance of the appellants' argument is that although the parents of the children denied knowledge of the defects in the fences surrounding the sand pit, many of the witnesses called by the plaintiffs testified to such defects. They argue that the jury was entitled to determine from such conflict which of the witnesses to believe with reference to prior knowledge of the condition of the fences.

The appellants did not introduce any evidence with respect to the contributory negligence of the appellees during the trial. All of the appellees' evidence disclosed they properly exercised their duty to guard and warn their children as to the common dangers existing in the order of nature. Neighbors testified that the dead boys were absolutely normal children, well behaved and obedient. The evidence does not suggest and no inference can be drawn that the appellees were derelict in their duties or obligations as parents.

We cannot say on the record here presented the trial court erred in withdrawing the issue of contributory negligence from the jury.

The appellant Davis Corporation contends the *voir dire* examination of the jury by counsel for the appellees inspired passion and prejudice in the jury. The appellant Davis Corporation's attack is not confined to any particular objection, but to a consideration of the examination of the jurors *in toto*.

In a voluminous record submitted for review, sixty-seven pages are devoted to the *voir dire* examination. Without going into detail the court has thoroughly considered the record and concluded, in view of the large discretion vested in the trial court, that its rulings in the course of *voir dire* examination furnish no ground for reversal. (See *Swift v. Platte*, 68 Kan. 1, 72 Pac. 271, opinion on rehearing 68 Kan. 10, 74 Pac. 635; and *Mathena v. Burchett*, 189 Kan. 350, 369 P. 2d 487.)

The record does, however, suggest an admonition.

Mr. Belli states (Melvin M. Belli's Modern Trials, Vol. § 121):

"Voir dire of the prospective panel should be used to accomplish two purposes: one, obvious, the excusing or striking of unfavorable prospective jurors; and, two, the opportunity to meet and impress those who will become the 'triers of the facts' with the justiciableness of one's cause. Counsel, in the latter phase, become friendly with, 'meet' the jurors. It is in trying to accomplish the latter that difficulty in conducting the voir dire sometimes results."

". . . The second motive of trial counsel in the voir dire has probably been one of the factors impelling federal courts to conduct this examination without 'aid' from either counsel." (p. 796.)

Mr. Belli suggests that, as a practical trial advocate, counsel should do as much converting of the jury as the court will allow.

The trial judge is under an obligation to see that a fair and impartial jury is selected. In doing so counsel should not be permitted to convert jurors to their cause by *voir dire* examination. If reasonable restraints upon counsel are abused to such an extent that opposing counsel is repeatedly required to object, the court, if necessary, should resort to the federal practice in a particular case and select the jury panel without the aid of counsel for either party.

The appellant Davis Corporation contends the trial court erred in permitting the appellees to depart from the theory of the lawsuit established by the pleadings and pretrial order, and that it admitted evidence not identified in the pretrial order.

Within reasonable limitations the theory upon which the petition was drawn, and the theory upon which the case was tried, conformed to the attractive nuisance doctrine as heretofore discussed.

Complaint that the trial court admitted testimony of witnesses who were not named in the pretrial order lacks substantial merit. Thirteen witnesses were named in the pretrial order, and through oversight counsel for the appellees overlooked listing one. None of the witnesses listed was examined by counsel for the appellants prior to trial, and the trial court admitted the testimony of the witness whose name was omitted, because the witness had testified before objection was made to his testimony at the trial. The trial court found the appellants were not prejudiced. Counsel for the appellees had notified counsel for Heersche in advance that this particular witness would be called, thinking counsel for Heersche was working with counsel for the Davis Corporation in preparation of the defense and would inform him of the fact. This was not done.

The pretrial order further provided that the appellees would introduce sixteen photographs. These photographs were not specifically identified in the order. During the proceedings out of the presence of the jury, counsel for the Davis Corporation objected to the introduction of three photographs not previously shown to counsel for the appellants. The trial court admitted only sixteen photographs in evidence and commented that the appellants were not prejudiced by the admission of the three questioned photographs in evidence.

Large discretion is vested in the trial court in matters of this kind. In *Brown v. Hardin,* 197 Kan. 517, 419 P. 2d 912, the court said:

"The pretrial conference provided for by K. S. A. 60-216 has become an important part of our procedural process designed, among other things, to acquaint each party in advance of trial with the respective factual contentions of the parties upon matters in dispute, thus reducing the opportunity for maneuver and surprise at the trial, and enabling all parties to prepare in advance for trial. At pretrial conference the court may make any determination that will aid in the fair, orderly and efficient disposition of the action. . . . The matters specifically mentioned in the pretrial statute are not exclusive. Many courts have come to require advance identification of witnesses to be called at trial, which practice serves a useful purpose and is a proper judicial exercise. Orders entered at pretrial conference have the full force of other orders of court and they control the subsequent course of the action, *unless modified at the trial to prevent manifest injustice* (K. S. A. 60-216). This latter proviso reposes in the trial court a large discretion and it is the exercise of this discretion plaintiff claims has been abused to his prejudice. . . ." (pp. 519, 520.) (Emphasis added.)

The appellants made absolutely no showing in the trial court that they were prejudiced in any way by the admission of the evidence to which they objected. Reversible error must be predicated upon prejudice. (*Collins v. City Cab Co.,* 192 Kan. 394, 388 P. 2d 597.)

Upon review of the record we cannot say the trial court abused the exercise of its power of discretion by the modifications permitted in the pretrial order.

The appellant Davis Corporation contends instructions Nos. 6 and 8 permitted the jury to hold it liable for ordinary negligence in the event an attractive nuisance was not established. It is argued the trial court submitted the case to the jury as a simple negligence case and instructed that either violation of the city ordinance or maintaining an attractive nuisance was negligence.

Technically, if these two instructions were isolated, the argument of the appellants may have some merit. But between instruction No. 6 and instruction No. 8 was No. 7 which reads:

"A possessor or owner of property owes the duty to trespassers only to refrain from wilful and intentional injury. This rule applies equally to children of tender years as to adults.

"An exception to this rule known as the attractive nuisance theory applies to children of tender years and jointly subjects the owner and operator of the premises to liability for the death of the plaintiffs' children caused by some condition maintained on the premises if:

"(a) It was known or in the exercise of ordinary care should have been known to them, that young children are likely to trespass upon the premises, and,

"(b) It was known or in the exercise of ordinary care should have been known by them that certain conditions existed involving an unreasonable risk of harm or death to young children, and,

"(c) Children, because of their youth, either did not discover the conditions or understand the danger involved, and,

"(d) One using ordinary care would not have maintained the conditions when taking into consideration the usefulness of it, and whether or not the expenses or inconvenience to the defendants in remedying the conditions would be slight in comparison with the risk of death to the children."

When these instructions are read in sequence and construed with other instructions as a whole, as the jury was instructed, it cannot be said the instructions misled the jury, particularly where the evidence, as here, was not in substantial conflict as to the conditions giving rise to an attractive nuisance.

The appellant Davis Corporation contends the forms of the verdict and instructions pertaining to joint liability of the appellants were erroneous.

The question as to the joint liability of the appellants herein has heretofore been discussed.

The trial court submitted only two verdict forms. One was intended as a general verdict for the plaintiffs and the other as a general verdict for the defendants. The Davis Corporation throughout the trial moved for a dismissal at appropriate times on the ground there was no evidence showing that it had control of or operated any of the equipment owned by Heersche. It was admitted that the Davis Corporation owned the site of the sand pit.

In view of the evidence disclosed by the record on appeal, and ordinance No. 27-273, heretofore discussed (and upon which the jury was properly instructed), the verdict forms submitted were proper. If the plaintiffs below sustained their burden of proof and established liability on the part of the appellants, as the jury found they did by its general verdict, the appellants were jointly and severally liable.

The appellants contend the verdict is excessive because it was for the statutory maximum of $25,000 plus the expenses of burial for each of the two deceased boys. The maximum authorized by law may be found in K. S. A. 60-1903 and 60-1904.

The measure of damages for the wrongful death of any person is difficult for a jury to compute. When children of tender years are involved the difficulty is compounded. Questions as to how to compensate for the mental anguish, suffering or bereavement of parents, the loss of society and companionship of a four or five year old boy, the loss of filial care or attention which at best is anticipatory and speculative, are questions which the legislature has wisely placed in the hands of the court and jury. The burden of answering these questions is loaded with imponderables. The only limitation the legislature has placed upon the matter is the setting of a maximum limit. As of July 1, 1967, this maximum has been increased to the sum of $35,000. (K. S. A. 1968 Supp. 60-1903.)

Reviewing the record in the light of our previous decisions, we cannot say the verdict approved by the trial court was excessive. (*Hadley v. Security Elevator Co.,* 175 Kan. 395, 264 P. 2d 1076; *DeGraw v. Kansas City & Leavenworth Transportation Co.,* 170 Kan. 713, 228 P. 2d 527, and cases cited in these decisions; and see *Corman, Administrator v. WEG Dial Telephone, Inc.,* 194 Kan. 783, 402 P. 2d 112.)

Having thoroughly reviewed the voluminous record presented in connection with the points asserted by the appellants, we hold the appellants have failed to make it affirmatively appear the trial court committed reversible error in ruling upon any of the foregoing matters concerning which complaint is made.

A cross appeal has been taken by the Davis Corporation from the order of the trial court dismissing its cross petition against the defendant Heersche.

At the pleading stage of the case the Davis Corporation filed a cross petition against Heersche alleging a contract between them whereby Heersche agreed to indemnify and save harmless the Davis Corporation from all claims, liabilities and obligations by reason of Heersche's operation on and occupancy of the premises involved in this litigation. A copy of the agreement was attached to the cross petition and made a part thereof.

In the contract the Davis Corporation was entitled to indemnity from Heersche by virtue of an indemnity provision in the grant

to remove sand and gravel in his operations on and occupancy of the premises. Heersche also contracted to keep the premises and operations insured within minimum limits of $25,000, the Davis Corporation to be carried as named insured. Heersche also agreed to comply with all laws and regulations of any municipal or governmental body that may affect his operations on the premises, violation of which would render Heersche liable to the Davis Corporation for any judgment obtained against the Davis Corporation for violation of a municipal law.

After judgment was entered against the appellants in this case, Heersche filed a third party complaint bringing the Iowa Mutual Insurance Company of DeWitt, Iowa, and its general insurance agents located in Kansas into the case. In the third party complaint Heersche alleged, among other things, the Iowa Mutual Insurance Company by and through its agents issued an insurance policy to him whereby it agreed to pay on behalf of Heersche all sums which he became legally obligated to pay as damages because of bodily injury, sickness or disease, including death, at any time resulting therefrom sustained by any person and caused by accident. It further alleged the insurance company refused to pay the verdicts specifically set forth.

The third party complaint also alleged a controversy between Iowa Mutual Insurance Company and Heersche as to the existence of a policy covering Heersche for the damages sustained by reason of the instant action. It also alleged that prior to the trial of the principal case Iowa Mutual Insurance Company could have settled the cases for $18,000 each or less, but refused to do so knowing that it intended to avoid full coverage under the policy. Further allegations were made respecting the failure of Iowa Mutual Insurance Company to pay the judgment in favor of the plaintiffs against Heersche and alleged acts of negligence on the insurance company's part.

Thereafter, Heersche and the Iowa Mutual Insurance Company joined in a motion to dismiss the cross petition of the Davis Corporation, and the trial court after hearing argument sustained the motion without giving any reasons, citing as its authority K. S. A. 60-214 (a) and *Alseike v. Miller*, 196 Kan. 547, 412 P. 2d 1007.

In sustaining the motion to dismiss the cross petition of the Davis Corporation the trial court erred.

The cross petition of the Davis Corporation was a cross-claim against a co-party defendant pursuant to a *contract* of indemnity and did not involve the third party practice contemplated by K. S. A. 60-214 (*a*) which was the subject of controversy in the *Alseike* case. (See, also, *Russell v. Community Hospital Association, Inc.,* 199 Kan. 251, 428 P. 2d 783, which adhered to the *Alseike* case.)

In the instant case both Heersche and the Davis Corporation were made parties defendant by the plaintiffs in their action for damages. After judgment in this case the status of the defendants with respect to the plaintiffs was that of joint tortfeasors, but as between the two defendants the liability was controlled by a contract of indemnity. Under these circumstances the Davis Corporation was entitled to cross-claim against Heersche as a co-party defendant pursuant to K. S. A. 60-213 (*g*). (See 1A Barron and Holtzoff, Federal Practice and Procedure, § 397, p. 598; and Gard, Kansas Code of Civil Procedure Annotated, § 60-213 [g], p. 70.) The situation here presented was specifically excepted from the ruling in the *Alseike* and *Russell* cases.

The provisions of 60-213 (*g*) are identical to Federal Rule No. 13 (*g*) and federal cases construing this section authorize the cross-claim under circumstances disclosed by the record herein. (*Sebo v. United Air Lines,* 10 F. R. D. 327 [S. D. N. Y. 1950]; and *Winikoff v. United Air Lines,* 10 F. R. D. 474 [E. D. N. Y. 1950].)

Accordingly, the judgment of the lower court dismissing the Davis Corporation's cross petition against Heersche must be reversed.

The judgment of the lower court is affirmed as to the appeal and reversed as to the cross appeal.