No. 35,446

·THE STATE OF KANSAS, *Appellee*, v. MACEO THOMAS, *Appellant*.

(125 P. 2d 375)

Opinion filed May 9, 1942.

*Elisha Scott,* of Topeka, argued the cause, and *Elisha Scott, Jr.,* of Topeka, was on the briefs for the appellant.

*Ward Martin,* county attorney, argued the cause, and *Jay S. Parker,* attorney general, was on the briefs for the appellee.

The opinion of the court was delivered by

Hoch, J.: Defendant appeals from a conviction of maintaining an intoxicating-liquor nuisance in violation of G. S. 1935, 21-2130. In the same information he was also charged on another count with unlawful possession of intoxicating liquor, and upon that count he was acquitted. His principal contentions here are that the verdict of guilty on the nuisance count should be set aside because (1) it is inconsistent with acquittal on the possession count, and (2) it is not supported by any substantial evidence.

The first contention has been squarely rejected in prior decisions of this court. Possession of intoxicating liquor is not essential to establishment of guilt under G. S. 1935, 21-2130. The statute includes, among other descriptions of a common nuisance, places "where persons are permitted to resort for the purpose of drinking intoxicating liquors as a beverage." (*State v. Geselle,* 131 Kan. 729, 293 Pac. 494, and cases therein cited.)

After a careful examination of the record we conclude that appellant's second contention is equally untenable. It is not the function of appellate courts, which have not had the opportunity afforded in the trial court of noting the demeanor of witnesses and otherwise passing upon their credibility, to weigh conflicting evidence. Upon appeal from conviction in a criminal action the evidence must be viewed in the light most favorable to the state, and the verdict will not be disturbed if there was substantial evidence, even though entirely circumstantial, as a basis for a reasonable inference of guilt. (*State v. Murphy,* 145 Kan. 242, 65 P. 2d 342; *State v. Harper,* 137 Kan. 695, 22 P. 2d 454; *State v. Wood,* 145 Kan. 730, 67 P. 2d 544; *State v. Davis,* 106 Kan. 527, 532, 188 Pac. 231.)

For a number of years defendant has operated a business or club, upstairs at 114 East Fourth street in Topeka. The club, said to be chartered as a nonprofit club, is known as the Young Men's Progressive Athletic Club. Appellant pays tribute to the character of the club's membership and urges that the sole purpose of the club is to provide lawful entertainment and recreation for its members— a place where they may meet to play games and otherwise enjoy social fellowship. But the legitimacy of the organization and the standing of its members is not at issue here. We can look only at the record to see whether the state presented any substantial evi-

dence to support a reasonable conclusion that the defendant was guilty as charged.

There was evidence that when police officers went to the premises on August 9, 1941, they found their admission barred by a steel-covered door which was barred on the inside and had a small peep-hole in one of the panels; that the officers knocked but no one answered for a while; that after waiting for some minutes the officers began hitting the door with a sledge hammer and then someone said, "Don't tear my door up, and I'll open it." The door was then opened. One officer testified that while they were waiting to be admitted he heard someone say "it is the police" and heard the sound of breaking glass inside. Other officers had gone to a back stairway where they also found the way barred by a steel-covered door. The owner of the building testified that he did not install the steel-covered doors and didn't know who did, but he didn't think they were put there before the defendant rented the place. The upstairs quarters appeared to consist of several rooms on each side of a central hall. On one side of the hall one room had tables and chairs in it and another had what one officer said "I would call a bar." This officer further testified: "It is a back bar, with glasses on it. It has a front bar, ice box, nickelodeon, and then the third room has another makeshift bar, there is a counter in it, with a lot of boxes and paper and stuff stacked behind it, and empty bottles, etc." The rooms on the other side of the hall were apparently living quarters. The officer testified that at the door of one of these rooms he detected a strong odor of liquor. On one side of this room was a window which opened to the wall of an adjacent building, there being a space of only six or eight inches between the two walls. Using a flashlight, the officers looked down between the buildings and saw a lot of broken bottles and several unbroken liquor bottles with liquid in them. The window sill was wet and there was some broken glass on it. One officer testified he noticed an odor which "smelled like whisky" near the window. Standing near by was a bamboo pole which had a wire coat hanger fastened to the end and shaped like a hook. The officer started to use this pole to fish the liquor out of the window, but the defendant who was standing near told him that the pole belonged to him and he couldn't use it. Later the officer returned to the room in the absence of defendant and by attaching to the pole a string with a slipknot succeeded in drawing up one of the unbroken bottles. A chemist

for the Lattimore laboratory testified that the contents of the bottle tested 50.2 percent alcohol by weight. When the officers entered the place there were a number of persons standing around "drinking one thing and another," but there was no testimony that any of them was drinking intoxicating liquors. "One man threw what he was drinking on the floor. I don't know what it was." Several officers took part in the raid and their testimony was substantially as above stated. A number of whisky glasses were taken by the officers from the bar and introduced in evidence. There was testimony that when taken "there was the odor of liquor" on the glasses. Appellant admits, in his brief, that these glasses were found but says, "they were for decoration only."

The same club rooms, while operated by defendant, had been searched by police officers on previous occasions, and on at least one such occasion bottles of whisky had been found at the same place in the narrow space between the buildings and below the same open window. As before noted, it is not within our function to give consideration to the testimony of defendant and various club members tending to establish his innocence. That was for the jury.

On the evidence submitted by the state, we cannot say that the jury could not reasonably arrive at a verdict of guilty on the nuisance count.

The judgment is affirmed.