No. 42,522

ROBERTA ANN MATHENA, by Robert E. Mathena, her father and next friend, *Appellee*, v. FRANCIS BURCHETT, *Appellant*.

(369 P. 2d 487)

Opinion filed March 3, 1962.

*Harold E. Doherty*, of Topeka, argued the cause, and *James E. Benfer*, of Topeka, was with him on the briefs for the appellant.

*Ward Martin*, of Topeka, argued the cause, and *A. Harry Crane, Arthur L. Claussen, Harvey D. Ashworth, Raymond L. Spring*, of Topeka, and *J. W. Lowry*, of Atchison, were with him on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.: This was an action filed by plaintiff (appellee) Roberta Ann Mathena, a minor three and one-half years of age, through her father against Francis Burchett, defendant (appellant), seeking to recover damages for personal injuries alleged to have been suffered because of the negligence of the defendant in operating his automobile at the time and place in question under the conditions then existing.

The case was tried to a jury which returned its general verdict in favor of plaintiff. At the same time, the jury returned its answers to special questions submitted to it finding that the defendant failed to act as an ordinary prudent person under the same and similar circumstances and that the proximate cause of plaintiff's injuries was the negligence of defendant in failing to have a proper lookout and to see objects in the line of his vision. From an order of the trial court overruling defendant's post-trial motions and entering judgment in plaintiff's favor defendant appeals.

A very brief résumé of the facts is: The plaintiff was a child three and one-half years of age. At 4:30 p. m. on June 17, 1959, the defendant was traveling south on a rough, gravel street, thirty feet in width, in the residential section of the city of Hoyt at a speed of ten to fifteen miles an hour. The plaintiff's home was located on the east side of this street and faced the west. A truck, facing north, was parked in front of plaintiff's house, the rear end of the truck being located opposite the sidewalk leading up to plaintiff's house. Across the street from plaintiff's home, and some fifty to sixty feet to the south, was a vacant lot where a number of small children were playing. Persons standing 200 to 300 feet north of plaintiff's position observed her start across the street at a point about 40 feet south of the parked truck. As plaintiff reached approximately the center of the street she was struck by the front end of defendant's automobile. A witness, Bolz, standing 200 to 300 feet north of defendant's automobile, testified he saw plaintiff start across the street and that he thought to himself, "Well, this little girl is going to have to run to get across. . . ." The defendant testified that as he drove down the street he observed the children playing on the west side of the street but that he did not see plaintiff coming from the east side until he heard a thump and saw the plaintiff spinning around in the center of the road. He then stopped within a car's length. As the result of being struck by defendant's automobile plaintiff received serious injuries to her face and head, which required surgery, and disfiguring scars were left on her forehead and around her eyes, which will require further plastic surgery.

Defendant first contends, in substance, that plaintiff's evidence was insufficient to establish a *prima facie* case of negligence against him, and, therefore, the trial court erred in overruling his motion for a directed verdict. Defendant concedes inasmuch as plaintiff

is a minor of tender years the only question is whether or not the defendant was guilty of any act of negligence. As related, there is evidence to support the jury's answers to the special questions and the general verdict. Defendant admits he saw the children playing on the west side of the street but did not see the plaintiff coming from the east, although two witnesses standing between 200 and 300 feet to the rear of the defendant's car saw the little girl enter the street some 40 feet or more to the rear of the parked truck. Certainly if these witnesses saw the plaintiff in the street, the defendant, by the exercise of reasonable care and by keeping a proper lookout, could have seen the plaintiff in time to have stopped his car and avoid the injury. We find no merit in defendant's contention.

Defendant next contends that the court erred in giving certain instructions by placing undue emphasis on the duty of the operator of a vehicle to keep a careful lookout. We have examined the instructions complained of and find that they properly state the law. Moreover, inasmuch as all of the instructions are not contained in the record we cannot say that any undue emphasis was put upon defendant's duty under the law.

It appears that defendant's principal contention of error was in the trial court's permitting plaintiff's attorney on the *voir dire* examination of the jury to ask the two following questions:

"Q. . . . have any of you gentlemen ever attended law school or adjusted losses for either an adjusting company or insurance company or engaged in that work, or been engaged in the sale of insurance as an insurance agent? Have any of you gentlemen ever been engaged in that type of work?

"Q. Have any of you gentlemen ever been law enforcement officials at any time and as such compelled to investigate accidents? I gather by your silence that none of you have . . ."

Defendant moved the court to declare a mistrial because of the misconduct of plaintiff's counsel in deliberately attempting to inject insurance into the case.

In the examination of the jury on *voir dire* plaintiff's counsel, after individually questioning the jurors on other matters, asked the full panel the two aforementioned general questions. At no other place during the trial was insurance mentioned. The defendant relies heavily on the asking of the two mentioned questions as reversible error.

As far back in history as the turn of the century this court has been troubled with the alleged prejudicial effect of the term "insurance"

and the concurrent inference that the defendant is insured. In 1903 in the case of *Swift v. Platte*, 68 Kan. 1, 6, 72 Pac. 271, this court said considerable latitude should be allowed counsel in the examination of jurors, so that all who have bias or prejudice, or are otherwise disqualified, may be eliminated. Questions are not to be barred merely because the answers elicited would be incompetent under the issues in the case; nor are parties to be hampered in a thorough examination, made in good faith, to keep off the panel partial, prejudiced and unfit men. We further said the inquiry may be extended to the social and business relations of the proposed jurors with the parties to the action or with anyone connected with the litigation. It should, however, be conducted in good faith for the purpose of sifting the panel and excluding those who are disqualified or *objectionable* by challenges peremptory or for cause. In the aforementioned case the court reversed the trial court's allowance of the question there asked the jurors on their *voir dire* by saying,

"The inquiries were not so much directed at the possible connection of jurors with insurance companies or with those representing them, but mainly pressed upon the jurors questioned, as well as those listening, the fact that packing companies were insured, and that these companies were hiring the lawyers and would pay the judgment if any should be given."

However, on the rehearing, *Swift v. Platte,* 68 Kan. 10, 74 Pac. 635, the court corrected itself and found:

"Unless, therefore, the inquiry was not conducted in good faith, or was so unnecessarily extended as to constitute an abuse of discretion by the court, we cannot say there was error. If we had the knowledge of the proposed jurors and the local situation such as the trial court had, we might readily say that good reasons existed for the character and extent of the inquiry. The trial court decided that the extended inquiry was necessary and proper, and it must have determined that it was conducted in good faith by counsel. It was in much better position to determine the question of good faith than are we, and, having in view the large discretion vested in the trial court as to the extent of the inquiry, we cannot say that its rulings furnish a ground for reversal."

Chief Justice Johnston, in speaking for this court on pages 7 and 8 of the first mentioned case, stated there is no more important feature of a trial than the impaneling of an impartial and unbiased jury, and courts are very liberal in allowing inquiries into the competency and qualifications of persons called as jurors. The examination serves a double purpose—first, to learn whether there is a disqualification or cause for challenge, and, second, to enable a party to determine whether he shall exercise the right of peremptory chal-

lenge given by statute. So careful is the law that a fair jury may be obtained that it not only provides for the exclusion of those shown to be partial or prejudiced, but it gives each party the added right to challenge a certain number not shown to be prejudiced or disqualified, whom the parties may desire to exclude for reasons not recognized by the law. Apart from admitted bias or prejudice, persons may be exluded from the panel because of possible prejudice on account of pecuniary interest, relationship, or business connection with the parties to the action.

In the second case referred to, at page 11, the same chief justice, in speaking for this court, said, "To enable a party to guard against the inclusion of prejudiced jurors it was proper for the court to allow a full and searching inquiry as to a possible connection of the proposed jurors with an indemnifying company or with its agents or attorneys, and whether they would be affected or prejudiced if such indemnity existed."

Probably the most revealing aspect of this court's feeling is found in the original opinion of the aforementioned case where it made the fine distinction between the focus of questions on *voir dire* that attempt to determine the relationship or business background of a juror and those that inferentially indicate the defendant is insured and will not be financially liable for a judgment against him. As recent as *Thompson v. Barnette*, 170 Kan. 384, 389, 227 P. 2d 120, this court said, ". . . it surely cannot be argued that counsel for either side, in any kind of a lawsuit, would select a jury without first making inquiry concerning the business or occupation of the members of the jury panel." In *Billings v. Aldridge*, 133 Kan. 769, 776, 777, 3 P. 2d 639, on examining the jurors on their *voir dire* counsel asked each of them if he was connected, as stockholder or otherwise, with any insurance company that has for one of its purposes the insuring of public work contractors against damages which third persons may sustain, or if he held a policy in any such company, or if he had been employed as agent, or otherwise, for such a company. We held that questions of this character may be propounded to jurors on their *voir dire* if they are asked in good faith. Ordinarily the trial court is the judge of whether they are so asked. (*Swift v. Platte*, 68 Kan. 10, 74 Pac. 635; *Howard v. Motor Co.*, 106 Kan. 775, 190 Pac. 11; *Smith v. Ice and Delivery Co.*, 117 Kan. 485, 490, 232 Pac. 603; *Peters v. Cavanah*, 132 Kan. 244, 247, 248, 295 Pac. 693.) The fact that the trial court overruled objec-

tions to these questions indicates that it regarded them as being asked in good faith. The extent to which counsel should be allowed to go in examining jurors as to their qualifications cannot be governed by any fixed rules. The examination is conducted under the supervision and direction of the trial court, and the nature and extent of the examination and what questions may or may not be answered must necessarily be left largely to the sound discretion of the trial court, the exercise of which will not be interfered with unless clearly abused. (*State v. Hoffman*, 344 Mo. 94, 125 S. W. 2d 55.) It is elemental that the scope must be regulated by the purpose of such examination, that purpose being whether the prospective juror has both the statutory qualification of a juror and is free from bias or prejudice for or against either litigant. Both parties are entitled to an impartial jury, and a fair and impartial trial is the birthright of every litigant. The examination of the jury should neither be overly liberalized nor should it be unduly restricted. For further discussion on right to interrogate jurors on *voir dire* see annotation 105 A. L. R. 1330; annotation 4 A. L. R. 2d 761, 765, 792, *et seq.*; and 1 J. B. K. 125, *et seq.*

In the instant case the two questions propounded to the jury as a whole did not indicate that either plaintiff or defendant carried insurance. Plaintiff's counsel sought to ascertain only whether any of the jurors adjusted losses for either an adjustment company or an insurance company or had been engaged in that type of work, or whether they had acted as an insurance agent or had been law enforcement officers and as such had been compelled to investigate accidents. Regardless of whether defendant carried insurance plaintiff's counsel was entitled to elicit the information to determine whether he should challenge any member of the panel. It would seem important to counsel to know if any of the prospective jurors had engaged in such activities which in counsel's opinion would give such juror a special knowledge of the legal implications of such a case and the possibility of that knowledge carrying undue weight in the jury room.

We agree with the trial court that the aforementioned questions were proper, the inquiry was made in good faith, and no showing of prejudice is reflected in the record; therefore, the judgment of the trial court must be affirmed.

It is so ordered.