No. 49,196

STATE OF KANSAS, *Appellee,* v. JIMMIE L. COOK, *Appellant.*

(578 P.2d 257)

Opinion filed May 6, 1978.

*Fred A. Johnson,* of Wichita, argued the cause, and *Andrew E. Busch,* of Wichita, was on the brief for the appellant.

*Robert Sandilos,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, *Vern Miller,* district attorney, and *Stuart W. Gribble,* assistant district attorney, were on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is an appeal in a criminal action from a trial to the court in which Jimmie L. Cook (defendant-appellant) was found guilty on one count of aggravated kidnapping (K.S.A. 21-3421), one count of rape (K.S.A. 21-3502), one count of kidnapping (K.S.A. 21-3420), and one count of indecent liberties with a child (K.S.A. 1977 Supp. 21-3503).

The appellant asserts various trial errors occurred and challenges the sufficiency of the evidence on appeal.

On October 16, 1975, Miss P. and Miss T. decided to skip their seventh hour class at Pleasant Valley Junior High School in Wichita, Kansas. They were each fourteen years old. When the girls left school at approximately 2:00 p.m., they saw the appellant and Mike Loggins in a yard across the street. The two men walked away but returned shortly thereafter and approached the girls. They asked the girls their ages and whether they had boyfriends. After a brief conversation the appellant grabbed Miss

P. by the shoulder, put a kitchen knife to her neck, and told her not to scream. Loggins grabbed Miss T. by the arm and held a knife to her back.

The appellant then directed Miss P. to walk to a bridge over Highway I-235 which was located several blocks from the school. Loggins and Miss T. followed. When they reached the bridge the appellant instructed Miss P. to crawl inside a man-made, carpeted enclosure underneath some rocks along the bridge's wall. He told her to remove her clothes and she complied. He, in turn, removed his clothes. According to Miss P. the appellant then raped her. Miss P. testified she feared the appellant would knife her if she refused him.

During this time Loggins and Miss T. remained beneath the bridge outside the enclosure. Loggins told Miss T. to remove her clothes but she refused. He then grabbed her hair, put the knife to her throat and threatened to kill her. When she removed her overalls a rash on her hip was exposed. Loggins ordered Miss T. to put her overalls back on with the bib unfastened and to remove her shirt and bra. Thereafter he kissed her on the mouth and neck, lay on top of her and apparently simulated sex. He soon stated, "What's the use" and told her to hook up her overalls. Loggins then went through Miss T.'s purse and took 35 cents in addition to her Timex watch.

The appellant and Miss P. soon appeared from beneath the bridge. When Loggins asked if Miss P. had any money, the appellant stated, "Don't take their money." The two men ordered the girls to leave and threatened to kill them if they relayed the episode to anyone.

As the girls began walking to Miss P.'s home, they met Miss T.'s older brother who was in his car. After telling him what had happened the three saw Mike Loggins walking down the street. While Miss T.'s brother chased Loggins into a laundromat Miss T. and Miss P. saw Officer Mike Cummings of the Wichita police department cruising the area and told him what had occurred. Officer Cummings arrested Loggins and placed him in his patrol car where he subsequently found Miss T.'s watch on the floorboard.

Officer Nancy Bryan of the Wichita police department collected Miss P.'s underwear. She testified at the trial that laboratory tests revealed the presence of seminal fluid on the clothing.

At approximately 2:30 p.m. Officer John Espinoza of the Wichita police department was dispatched to the appellant's house at 3004 North Charles Street. The appellant's brother answered the door and allowed Officer Espinoza to enter. The appellant was sleeping on the living room couch. After being awakened he accompanied Officer Espinoza to the patrol car where he was advised of his *Miranda* rights. The appellant relayed the afternoon's events to the officer and called to his brother to get the knives. He was taken to the police station and formally charged.

The appellant testified in his own behalf at the trial. He stated he had been sniffing glue on the afternoon of the sixteenth of October. While he recalled leaving his home and later returning, he remembered nothing else during the afternoon. The appellant was convicted of the aggravated kidnapping and rape of Miss P. as well as kidnapping and taking indecent liberties with Miss T. His motion for a new trial was denied and appeal has been duly perfected.

The appellant first contends it was error for the trial court to sustain the prosecutor's objection to his question concerning the rape victim's previous sexual experience. During cross-examination the following exchange occurred:

"Q.  Okay. Now, have you ever had sexual relations before?
"MR. RUMSEY:  I object to that question, Your Honor.
"THE COURT:  Sustained."

After further testimony concerning the sexual act itself the appellant's counsel again attempted to ask Miss P. about her previous sexual experience. He questions:

"Q.  Based upon this your testimony is still that you're certain that he actually penetrated your vagina though?
"A.  Yes.
"MR. HOPPER:  Your Honor, I think at this time my original question that if this victim had ever had sex before is certainly relevant to establish whether she would actually realize whether or not there had been penetration of her vagina, I'd like to repeat my question at this time.
"THE COURT:  Well, the previous sexual history of the party in a rape case, of the victim, is not relevant to any issue in the case, and you will not be permitted to ask the question. Don't ask me to do it again."

The appellant assigns this ruling as error. He claims he desired to show the victim's sexual inexperience and inability to distinguish between penetration and close physical contact.

At the outset we note K.S.A. 60-447a now deals with the type of situation presented here. However, it first became effective July 1, 1976. The case at bar was tried on April 7, 1976, approximately two months before the effective date of the statute.

In any event, under our rules of evidence and recent case law the questions should not have been allowed. Generally when the chastity of the prosecutrix is in issue, it cannot be assailed by evidence of specific acts of unchastity with persons other than the accused. (See 65 Am. Jur. 2d, *Rape,* § § 82-85 [1972]; Annot., 140 A.L.R. 364, 365 [1942]; 4 Jones on Evidence, § 25:16 [6th ed. 1972]; and 1 Wigmore on Evidence, § § 62, 200 [3rd ed. 1977 Supp.].)

This is in accord with Kansas law. The discussion in Vernon's Kansas Statutes Annotated, Code of Civil Procedure, § 60-447a (1977 Supp.) states:

". . . Under existing law, evidence of prior sexual conduct with a person other than the defendant would ordinarily be relevant only as tending to prove the character trait of unchastity and thus would be inadmissible under K.S.A. 60-447. . . ." (p. 99.)

The appellant cites *State v. Gereke,* 74 Kan. 196, 200, 86 Pac. 160 (1906) as precedent. This opinion was later followed in *State v. Johnson,* 129 Kan. 207, 282 Pac. 723 (1929) and *State v. Rosenberry,* 156 Kan. 508, 134 P.2d 414 (1943). These cases hold that testimony relating the prosecutrix's illicit relationships with others than the accused is admissible on the issue of her *veracity.* Recent Kansas case law has held sexual morality has nothing to do with the honesty or veracity of a witness, and attempts to impeach the witness by cross-examination on sexual morality are prohibited under K.S.A. 60-422(*c*). (See *State v. Darling,* 208 Kan. 469, 477, 493 P.2d 216 [1972].)

Moreover, if the appellant had wished to question the prosecutrix whether actual penetration occurred, he should have phrased his question accordingly. (See Annot., 76 A.L.R.3d 163, 213 [1977].) The appellant could have properly pursued questioning of Miss P. regarding her knowledge of the male and female anatomy in order to establish whether penetration occurred. His question about prior sexual experience was not relevant to Miss P.'s knowledge of her anatomy; thus, the objection to the question was properly sustained.

The appellant next asserts the trial court erred in failing to

sustain his objection to the prosecutor's leading questions put to the arresting officer concerning the giving of *Miranda* rights.

This argument lacks merit. Wichita Police Officer John Espinoza testified he arrested the appellant and informed him of his *Miranda* rights. The record reveals the disputed testimony was as follows:

"Q. The four items that are listed on that card are they the same as the ones that are listed on your card?

"A. Yes, sir, they are.

"Q. Same ones that are listed on the card that you used to advise the defendant of his rights?

"A. Yes, sir.

"MR. HOPPER: Your Honor, I object, he's leading the witness.

"THE COURT: Well, overruled. However, he's already answered it.

"Q. Could you tell us what it was that you advised the defendant of?

"A. Okay. Can I read them off of this? This is what I told him.

"Q. You're using something to refresh your memory, are you?

"A. Yes, sir.

"Q. Are you using something to refresh your memory?

"A. Yes.

"MR. HOPPER: Objection, Your Honor, he's leading the witness.

"THE COURT: The witness testified he read them, there is no reason why the witness cannot read what he read. Overruled."

As a general rule whether leading questions should be permitted in a particular case rests within the sound discretion of the trial court. (*State v. Jones,* 204 Kan. 719, Syl. 6, 466 P.2d 283 [1970]; and *State v. Rowland,* 176 Kan. 203, 270 P.2d 211 [1954] and cases cited therein.) It is also well-settled law that questions propounded to a witness on preliminary matters, which neither prove nor disprove an issue in the case, are an exception to the rule regarding leading questions. (See 3 Wigmore on Evidence, §§ 770, 775 [Chadbourn Rev. 1970].)

The appellant objects to two questions which related to standard police procedure. They pertained to preliminary matters which were not seriously in dispute and no abuse of the exercise of the trial court's power of discretion has been shown.

The appellant also argues the trial court erred in failing to sustain his objection to the admissibility of statements he made at the time of his arrest and to the admissibility of the fruits of those statements. He contends he had been sniffing glue during the day and his statements were not voluntarily given.

Officer Espinoza testified that following the arrest and *Miranda*

warnings the appellant gave a detailed account of the crime and produced the knives he and Loggins had used. He stated the appellant appeared to be normal when he related the events of the day in detail. The appellant, on the other hand, testified he did not recall speaking to Officer Espinoza.

Uncoerced statements made to police officers by a defendant who has been given warnings as to his constitutional rights are admissible as evidence at his trial. (See *State v. Coe,* 223 Kan. 153, 161, 574 P.2d 929 [1977] and cases cited therein.) Furthermore, the defendant's use of drugs does not prevent the trial court from finding statements or a confession to have been freely and voluntarily given. (See *State v. Young,* 220 Kan. 541, 548, 552 P.2d 905 [1976] and cases cited therein.) Here the trial court was faced with an apparent conflict in the evidence. It considered the totality of the circumstances and determined the statements were voluntary. We find no error.

Finally, the appellant contends the evidence was insufficient to support the verdict.

The issue on appeal in a criminal case is not whether the evidence establishes guilt beyond a reasonable doubt, but whether there is sufficient evidence to form a basis for a reasonable inference of guilt when viewed in a light most favorable to the state. On appeal this court will not reweigh the evidence and pass upon the credibility of the witnesses. Our review is limited to ascertaining whether there is a basis for a reasonable inference of guilt. (See *State v. Howell,* 223 Kan. 282, 286, 573 P.2d 1003 [1977] and *State v. Crawford,* 223 Kan. 127, 573 P.2d 982 [1977].)

The record reflects more than sufficient evidence to sustain the appellant's convictions. Miss P. testified the appellant took her at knifepoint to a secluded area under a bridge where she undressed following his orders. She testified the appellant, who was not her husband, undressed and lay on top of her. Thereafter, Miss P.'s testimony was that he raped her. Officer Espinoza testified the appellant admitted he was with Michael Loggins, and they took two girls to an area underneath a bridge where the appellant had intercourse with one of the girls. Further, laboratory tests on Miss P.'s underwear revealed the presence of seminal fluid. Thus, the evidence was more than sufficient to sustain each conviction.

The judgment of the lower court is affirmed.