No. 52,084

STATE OF KANSAS, *Appellee,* v. DAVID RUSSELL PAYTON, *Appellant.*

(622 P.2d 651)

Opinion filed January 17, 1981.

*Steven R. McConnell,* of Mission, argued the cause and was on the brief for the appellant.

*Blair Watson,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Dennis W. Moore,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is an appeal in a criminal action from a jury verdict finding David Russell Payton (defendant-appellant) guilty of felony murder (K.S.A. 21-3401) and attempted aggravated robbery (K.S.A. 21-3301 and 21-3427).

The appellant raises nine issues on appeal. The appellant contends the trial court erred in (1) finding the appellant used a firearm and applying the provisions of K.S.A. 1979 Supp. 21-

4618; (2) admitting into evidence a confession by the appellant; (3) instructing the jury on aiding and abetting; (4) submitting an improperly worded instruction on criminal responsibility; (5) refusing to instruct on lesser included offenses; (6) refusing to instruct on voluntary intoxication; (7) refusing to change venue; (8) not sentencing the appellant as an aider and abettor; and (9) failing to merge the conviction for attempted aggravated robbery into the conviction for felony murder.

On June 20, 1979, Wallace E. Daniels, Jr., and Ann Foley were sitting in Daniels' car which was parked outside Pogo's discotheque, in Johnson County. An older model Cadillac pulled up next to Daniels' vehicle and two white males got out of the Cadillac. One of the men walked to the passenger side of Daniels' vehicle; the other man walked to the driver's side. The man on the driver's side put the barrel of a pistol to Daniels' head. Daniels grabbed the barrel of the pistol, and it discharged. The men fled. Daniels died two days later.

At about 11:30 p.m. the same night, the appellant was stopped on the basis of unrelated charges by members of the Kansas City, Kansas Police Department. The appellant was driving an older model Cadillac which he owned. The appellant was observed throwing something out a car window. The police found a .38-caliber blue steel revolver about six feet from the appellant's car. Ballistics tests indicated the bullet causing Daniels' death was fired from the appellant's revolver.

The appellant was arrested three days later, on June 23, 1979, on the charges relating to this crime. The arresting officers, members of the Kansas City Metro Squad, advised the appellant of his *Miranda* rights at the time of arrest. The appellant was first taken to the Merriam, Kansas, Police Department, headquarters of the Metro Squad. At about noon Sergeant Alvin Drury and Detective Pete Edlund read the appellant his *Miranda* rights. The appellant requested to speak with an attorney, and the officers ceased interrogation. The appellant was transferred to the Johnson County jail.

During the afternoon of June 23, members of the Johnson County District Attorney's office attempted to contact two attorneys requested by the appellant. Both attorneys declined to represent the appellant.

At about 6 p.m. that day, the appellant signed a second written

*Miranda* rights waiver form, and gave an oral statement to Detective Edlund, Sergeant Drury, and Assistant District Attorney Larry McClain. A court reporter transcribed the 27-page statement. The first several pages of the statement reveal the steps taken to accommodate the appellant's request for an attorney, and the appellant's recital of his rights. The appellant thoroughly discussed his constitutional rights and agreed to give a statement without an attorney's presence.

In his statement on June 23, the appellant confessed to both of the crimes charged. The appellant stated that during the early evening of June 20, he and the two codefendants, Lester "Butch" Ellifrits and William Shaffer, engaged in much drinking, and drove around the metropolitan Kansas City area. At Ellifrits' request, they took along the appellant's .38 revolver. The appellant stated that he was driving his 1967 four-door Cadillac. They drove and drank until the appellant was "completely intoxicated." At Ellifrits' request they went to Pogo's. They discussed robbing someone, and Ellifrits "chickened out." The appellant stated that he and Shaffer "got out of the car and walked up and I got over on the driver's side and he went over to the passenger and I set the gun in the window. At that time, the guy rolled up the window. . . . It was maybe a quarter of an inch or so below my wrist and I couldn't move and he grabbed the gun and we began a little fighting and the next thing I know, the gun went off."

At trial, the State presented the testimony of Victor Wells and Lester Buckley. Both young men testified that on June 19, the appellant and Ellifrits said they were going to rob someone, and invited Wells and Buckley. Wells and Buckley identified the .38 revolver as the same one the appellant had in his back pocket on June 19. Wells testified that on June 22 he had another conversation with the appellant. The appellant told Wells they had gone to Pogo's to rob someone and the gun went off.

Ann Foley testified that the appellant was the man who stood on the passenger side of the car when Daniels was shot. Ann Foley described William Shaffer as the man who held the gun to Daniels' head. Shortly after the murder, Foley assisted police in preparing composite sketches of the assailants. A sketch resembling the appellant represented the man on the passenger's side; a sketch resembling William Shaffer represented the man who held the gun.

The appellant testified on his own behalf. He testified that he was intoxicated most of the evening of June 20, having consumed large quantities of alcohol. He testified that Ellifrits mentioned robbing someone, but he thought Ellifrits was joking. The appellant was driving when they arrived at Pogo's. Shaffer first exited the car and said, "Let's go." The appellant then got out of the car, and walked to the passenger side of Daniels' car. The appellant heard a popping sound, saw Shaffer run back to the car, and ran to the car himself. Ellifrits drove the car away from Pogo's.

The appellant denied ever having a discussion in the presence of Wells or Buckley. The appellant testified that he lied during his confession on June 23. The appellant testified he lied when he stated that he held the gun when it discharged; he lied to protect Ellifrits and Shaffer, who have children and wives.

The jury returned guilty verdicts on one count of felony murder, for which the appellant received a minimum and maximum life sentence; and one count of attempted aggravated robbery, for which the appellant was sentenced to one to five years. The trial court invoked the provision of K.S.A. 1979 Supp. 21-4618, and appeal has been duly perfected.

The appellant first contends the trial court improperly invoked the mandatory firearm sentencing statute (K.S.A. 1979 Supp. 21-4618). Proper resolution of that issue requires that we first resolve the question raised in appellant's issue No. 2. The appellant contends in the second issue that the trial court erred in admitting into evidence the confession made on June 23, 1979.

The appellant emphasizes the fact that he requested an attorney around noon, and made the confession around 6 p.m. At the trial, the appellant testified that during the afternoon Sergeant Drury repeatedly asked him to make a statement. The appellant extrapolates from those facts that he was "badgered" into making the confession, hence the confession was not freely and voluntarily given.

We discussed admissibility of confessions in *State v. Higdon*, 224 Kan. 720, 722, 585 P.2d 1048 (1978), and stated:

"As a general rule uncoerced statements made to police officers by a defendant who has been given warning as to his constitutional rights are admissible as evidence at his trial. *State v. Cook*, 224 Kan. 132, 137, 578 P.2d 257 (1978); *State v. Coe*, 223 Kan. 153, 161, 574 P.2d 929 (1977), and cases cited therein. To be

admissible, a confession or extrajudicial statement must have been freely and voluntarily given. When a trial court conducts a full pretrial hearing on the admissibility of an extrajudicial statement by the accused, determines the statement was freely, voluntarily, and knowingly given and admits the statement into evidence at the trial, the appellate court should accept that determination if it is supported by substantial competent evidence. *State v. Treadwell,* 223 Kan. 577, 578-79, 575 P.2d 550 (1978); *State v. Freeman,* 223 Kan. 362, 372, 574 P.2d 950 (1978); *State v. Coop,* 223 Kan. 302, 309, 573 P.2d 1017 (1978)."

In *State v. Prince,* 227 Kan. 137, Syl. ¶ 4, 605 P.2d 563 (1980), we listed several factors to consider in determining voluntariness of a confession, stating:

"Factors bearing on the voluntariness of a statement by an accused include the duration and manner of the interrogation; the ability of the accused on request to communicate with the outside world; the accused's age, intellect and background; and the fairness of the officers in conducting the interrogation. The essential inquiry in determining the voluntariness of a statement is whether the statement was the product of the free and independent will of the accused."

We have examined the record and are satisfied the appellant's confession was given freely and voluntarily, after a knowing and intelligent waiver of his constitutional rights. The confession itself is the best evidence supporting our conclusion. The transcribed statement fills 27 pages in the trial transcript. The first eight pages contain a detailed recital of the day's events. Two *Miranda* rights waiver forms were signed by the appellant. When the appellant requested an attorney the initial interrogation ceased. Two attorneys were contacted by the District Attorney's office on behalf of the appellant. The appellant was informed of those efforts, and stated that his real concern was representation by an attorney at the time of trial. The appellant was fully aware of his right and ability to communicate with an appointed attorney before answering any questions. The interrogation was not of long duration, and was conducted in a formal, noncoercive manner. There is nothing about the appellant's age, intellect or background which impeaches the voluntariness of the confession. Finally, the transcript reveals the interrogation itself was a model of fairness in its general conduct and in the form of questioning. The trial court overruled the appellant's motion to suppress and admitted the confession at trial. Nothing in the record on appeal, aside from the appellant's testimony at trial, supports the appellant's claim that he was badgered into giving the confession.

We return now to the issue the appellant designated as No. 1. The appellant contends there was insufficient evidence to support the trial court's finding that the appellant used the gun during the crime. On appeal, the scope of review of sentencing under K.S.A. 1979 Supp. 21-4618 is limited to whether there was competent evidence to support a finding that the defendant used a firearm in perpetrating the crime. *State v. Mack,* 228 Kan. 83, Syl. ¶ 2, 612 P.2d 158 (1980). Here, there was sufficient evidence in the appellant's confession, and it was corroborated by the testimony of Wells and Buckley.

In the appellant's issues No. 3 and 4, he claims the trial court erred in giving the following instruction:

"A person is criminally responsible for the conduct of another *and is equally guilty with the person actually committing the crime* when, either before or during the commission of a crime, and with the intent to promote or assist in the commission of the crime, he intentionally aids or advises the other to commit the crime." (Emphasis added.)

The appellant contends there was insufficient evidence to support giving the jury an instruction on aiding and abetting, and that the instruction erroneously contained the language on equal guilt.

The trial court is required to instruct the jury on the law applicable to the facts of each case. K.S.A. 60-251(*a*). In *State v. McDaniel and Owens,* 228 Kan. 172, 178, 612 P.2d 1231 (1980), we stated:

"Mere association with the principals who actually commit the crime or mere presence in the vicinity of the crime is insufficient to establish guilt as an aider or abettor; however, when a person knowingly associates with the unlawful venture and participates in a way which indicates he willfully is furthering the success of the venture, such evidence of guilt is sufficient to go to the jury. *State v. Wilson & Wentworth,* 221 Kan. 359, 367, 559 P.2d 374 (1977); see *State v. Schriner,* 215 Kan. 86, 523 P.2d 703 (1974). A person is criminally responsible for a crime committed by others if that person *intentionally* aids and abets the others in the commission of the crime. *State v. Goering,* 225 Kan. 755, 758, 594 P.2d 194 (1979); see *State v. Edwards,* 209 Kan. 681, 498 P.2d 48 (1972). K.S.A. 21-3205(1) states that '[a] person is criminally responsible for a crime committed by another if he intentionally aids, abets, advises, hires, counsels or procures the other to commit the crime.' "

There was sufficient evidence to require the instruction on aiding and abetting. The appellant's Cadillac was used to transport all three men to and from the scene of the crime. The appellant's .38-caliber revolver was used in the crime. The appellant was present at the scene of the crime. There was testimony

by Wells and Buckley which would support a finding of aiding and abetting in the crime of attempted aggravated robbery. If the jury believed Ann Foley's testimony that William Shaffer was the man who held the gun, then the jury could find the appellant guilty of aiding and abetting.

The trial court committed no error by modifying PIK Crim. 54.05 (1979 Supp.) with the equal guilt language. All participants in a crime are equally guilty without regard to the extent of their participation. See comment, PIK Crim. 54.05 (1971); *State v. Smolin,* 221 Kan. 149, 152-53, 557 P.2d 1241 (1976); *State v. Norwood,* 217 Kan. 150, 156, 535 P.2d 996 (1975); *State v. Jackson,* 201 Kan. 795, 799, 443 P.2d 279 (1968), *cert. denied* 394 U.S. 908 (1969), *overruled on other grounds,* 220 Kan. 726, 730, 556 P.2d 387 (1976). The modified instruction properly and fairly stated the law as applied to the facts in this case.

The appellant contends the trial court erred in refusing to instruct the jury on second degree murder, voluntary manslaughter, and involuntary manslaughter as lesser included offenses of felony murder. The applicable rules on lesser included offense instructions are adequately summarized in *State v. Sullivan & Sullivan,* 224 Kan. 110, 121, 578 P.2d 1108 (1978); and *State v. Words,* 226 Kan. 59, 63, 596 P.2d 129 (1979).

The facts of this case place it in the same category as our decisions in *State v. Words,* 226 Kan. at 63, and *State v. Marks,* 226 Kan. 704, 713-715, 602 P.2d 1344 (1979). Under the credible evidence presented in the record, the appellant was either guilty of a felony murder committed during the course of an attempted aggravated robbery, either by himself or William Shaffer, or the appellant was not guilty. The evidence offered only three versions of what occurred. Under the State's theories the appellant either held the gun, or intentionally aided and advised in the attempted aggravated robbery. According to the appellant's theory, he was present, but intoxicated and unaware a robbery was being attempted.

The appellant contends the trial court erred in refusing to instruct the jury on voluntary intoxication. In his confession, and in his testimony at trial, the appellant claimed he consumed a large quantity of alcohol the day and evening of the crime. The appellant argues that attempted aggravated robbery is a specific intent crime, to which voluntary intoxication is a defense.

The State contends that because aggravated robbery is a general intent crime, to which voluntary intoxication is no defense, the crime of attempted aggravated robbery should receive like treatment.

The trial court denied the appellant's request for a voluntary intoxication instruction on two grounds. First, the trial court ruled that attempted aggravated robbery is a general intent, and not a specific intent crime. Second, the trial court found there was insufficient evidence to show the appellant was intoxicated to the extent necessary to impair the ability to form specific intent.

Dealing with the trial court's second ruling first, the record provides the following evidence of the appellant's intoxication. In his confession, the appellant stated that he has a "very bad alcohol problem." The appellant stated that on the day of the crime, he and Butch Ellifrits "got some beer, some alcohol and stuff, and drank and drank . . . and got pretty well intoxicated." That evening "we went out riding around, just drinking and partying and completely intoxicated." The appellant stated that at Pogo's, Butch "chickened out at the last minute and I was completely intoxicated and drank all kinds of stuff that day and I just walked up and said I would do it."

At trial, the appellant testified about his intoxicated condition the day of the crime. His testimony closely paralleled the description he gave in the confession.

Despite the appellant's confession and testimony which described his consumption of large quantities of alcohol, and his own characterization as having been "completely intoxicated," the confession disclosed the appellant's mental capacity was not significantly impaired. In his confession, the appellant stated that he was driving the car during the evening, and parked the car at Pogo's. The appellant described with sober detail the conversation and actions at Pogo's. The appellant stated that despite his consumption of alcohol, he knew the robbery was wrong and foolish; he knew the gun worked. The appellant's testimony at trial also indicated that he comprehended what was occurring despite the large quantities of alcohol consumed. The appellant recalled Ellifrits' talk of a robbery, but testified he thought Ellifrits was joking. The appellant stated that he was driving and parked the car when they arrived at Pogo's. He described how he walked up to a Pontiac which he thought was a Firebird. He saw

a young female on the passenger side. The appellant remembered that she turned to him and said, "Is this for real?" He heard a popping sound and fled with Shaffer.

When conflicting facts are presented on the issue of voluntary intoxication, the question is usually for the jury. See *State v. Miles,* 213 Kan. 245, 246, 515 P.2d 742 (1973); *State v. Acheson,* 3 Kan. App. 2d 705, 709, 601 P.2d 375, *rev. denied* 227 Kan. 927 (1979). In *State v. Wright,* 221 Kan. 132, 138-139, 557 P.2d 1267 (1976), this court reviewed a defendant's evidence of drinking, but stated the "[d]efendant's own testimony negates any possibility that he was intoxicated to the extent that he was incapable of forming an intent to injure." See also *State v. Gross,* 221 Kan. 98, 99-100, 558 P.2d 665 (1976); *State v. Seely,* 212 Kan. 195, 510 P.2d 115 (1973). After examining the record in the instant case, we are satisfied the trial court did not err in refusing to instruct on voluntary intoxication. The evidence did not show the appellant was intoxicated to the extent that his ability to form the requisite intent was impaired.

Under the evidence presented by the record in this case, it is unnecessary to comment on the first reason asserted by the trial court for refusing to give the voluntary intoxication instruction.

In *State v. Neff,* 169 Kan. 116, Syl. ¶ 13, 218 P.2d 248, *cert. denied* 340 U.S. 866 (1950), it was said:

"A confession freely and voluntarily made is a statement against interest, is evidence of the most satisfactory character and deserving of the highest credit."

The appellant contends the trial court erred in refusing to grant his request for change of venue. The appellant argues that widespread publicity hindered the possibility of receiving a fair trial.

The appellant presented a motion for change of venue and various exhibits in support thereof, to the trial court. None of those items has been designated as part of the record on appeal, or described for this court in the appellant's brief. The trial court ruled that there was no showing of such great prejudice against the appellant that he could not obtain a fair and impartial trial in Johnson County. The trial court did not err in making this ruling. K.S.A. 22-2616. See *State v. Foy,* 224 Kan. 558, 561-62, 582 P.2d 281 (1978).

The appellant contends the trial court erred by not sentencing him as an aider and abettor. He bases his contention on his

version of facts which supported the aiding and abetting instruction.

K.S.A. 21-3205 provides that one found guilty as an aider and abettor is equally guilty as the person found principally liable. This was discussed in regard to issue No. 4, where the trial court modified the instruction on aiding and abetting. By statute and case law this jurisdiction has long held that any person who counsels, aids or abets in the commission of any offense may be charged, tried and convicted in the same manner as if he were a principal. *State v. Smolin,* 221 Kan. at 152. Such equal responsibility and treatment extends to punishment as well. In *State v. Yohe,* 203 Kan. 855, 857, 457 P.2d 12 (1969), this court discussed K.S.A. 21-105 (repealed July 1, 1970), the predecessor to K.S.A. 21-3205, and stated:

"Our statute removes any common-law penalty distinctions for participating in a crime as an accessory before the fact or as a principal in the second degree. An accessory before the fact and a principal in the second degree are guilty of the offense and are to be punished the same as the principal in the first degree."

See *State v. Ridge,* 208 Kan. 236, 238, 491 P.2d 900 (1971). In *State v. Edwards,* 209 Kan. 681, 683, 498 P.2d 48 (1972), we discussed K.S.A. 21-3205, stating that "[t]his new section was intended to supersede K.S.A. 21-105 which spoke in terms of principals in the first and second degrees and accessories before the fact, even though all were liable to the same extent for a crime." The Judicial Council comment to K.S.A. 21-3205 states "[t]his makes no change in the substance of the law." Here the trial court was not required to sentence the appellant as an aider and abettor, but correctly sentenced the appellant as a principal.

As the ninth and final issue, the appellant contends the trial court erred in sentencing him for the crime of attempted aggravated robbery. He contends that crime merged into the felony murder.

In *State v. Rueckert,* 221 Kan. 727, 733-35, 561 P.2d 850 (1977), it was held aggravated robbery and homicide do not merge. The court stated:

"The proper test for determining whether an underlying felony merges into a homicide is whether all the elements of the felony are present in the homicide and whether the felony is a lesser included offense of the homicide. If this is not true then the felony must be a separate and distinct offense and the doctrine of merger does not apply. While the force used to commit the robbery is an integral part of

the aggravated robbery, it is not the entire body of that offense. The essence of the aggravated robbery is to deprive a person of property, which is not an element of homicide. The aggravated robbery and the homicide do not merge."

The same reasoning applies here. There are elements of attempted aggravated robbery which evidence felonious purpose independent of the homicide.

The judgment of the lower court is affirmed.